KIMMARLE & HIRSH v. HOUSTON & TEXAS CENTRAL RAILWAY COMPANY ET AL.

No. 2668.

1. **Survey—Young Land District.**—By virtue of the Act of August 19, 1856, Young County during the continuance of its county organization had dominion for judicial purposes over the entire territory of Young County Land District.

2. **Same.**—After the disorganization of Young County in 1861 or 1862 Young County was attached to Jack County for judicial and registration purposes, and by virtue of the Act of 1866, which attached Young County to Jack County for judicial and other purposes, the jurisdiction of Young County for surveying purposes was transferred to Jack County.

3. **Practice in Supreme Court.**—Only the grounds set forth in a bill of exceptions for the exclusion of evidence will be noticed on appeal, though other and distinct grounds be set forth in the assignment of error.

4. **Evidence.**—The acknowledgment or proof of execution of a deed of conveyance from a railway company conveying land certificates issued to it by the State was not necessary to give effect to a conveyance of the same by the president of the company. Such a conveyance of certificates already located, on which patents had not issued, was properly filed in the General Land Office, and certified copy thereof under the seal of the General Land Office is admissible in evidence.

5. **Immaterial Error.**—An erroneous ruling on an immaterial issue by the trial judge can not affect the judgment rendered.

6. **Judgment by Default.**—While the allegations of the pleading of one in whose favor a judgment by default is rendered must be taken as proved, yet if the pleading does not set forth the cause of action as to names of parties, dates, and amount claimed, so as to enable the court to render judgment without resorting to evidence *aliunde,* no judgment by default can be sustained.

7. **Personal Judgment—Jurisdiction.**—No personal judgment can be rendered against a defendant who is a citizen of another State, and on whom process is served in another State.

, APPEAL from Tarrant. Tried below before Hon. R. E. Beckham.

The opinion states the case.

*James C. Scott,* for appellants.—1. The lands claimed by defendants having been patented by the State of Texas to Z. C. Collier in 1876, by virtue of Beaty, Seale & Forwood certificates, located and surveyed in 1875 by R. G. Armstrong, deputy surveyor under W. A. Benson, district surveyor of Jack Land District, and defendants owning by a regular chain of title under Collier, gave them the legal title; and before the plaintiff can disturb them, it must show a valid prior appropriation of the same land by a proper location of valid land certificates by a duly authorized

surveyor, and that so much of the public domain had been properly
segregated and appropriated by the acts of a lawfully constituted officer.

Conclusiveness of patents to defendant's lands.  Ney v. Mumme, 66
Texas, 270; Wimberly v. Pabst, 55 Texas, 592; Mitchell v. Bass, 26
Texas, 372.

On want of authority in the surveyors of Montague and Jack land
districts to locate the Waco & Northwest Railway Company scrip, and to
survey in Childress County in 1873.  Acts 1874, p. 162, sec. 2; Cox v.
Railway, 68 Texas, 227; Linn v. Scott, 3 Texas, 67; Peacock v. Hammond,
6 Texas, 544; Tabor v. Commissioner, 29 Texas, 519.

2.  The Act of the Legislature of 1874, page 162, section 2, is the first
law authorizing the surveyor of Jack Land District to survey in that sec-
tion of the State, and the mere fact that no direct previous law did exist
would not validate the surveys claimed by plaintiff.  Tabor v. Commis-
sioner, 29 Texas, 519, 520; Cox v. Railway, 68 Texas, 227, 230; Warren
v. Shuman, 5 Texas, 455, 456; Preston v. Browder, 1 Wheat., 115.  The
validating Act of the Legislature of 1881, page 104, chapter 91, does not
apply to Childress County; other counties are named, Childress is not.

3.  When land certificates have been located they lose their character-
istics as personal property; they are then only evidences of the realty they
represent, and conveyances thereafter must be in the manner of conveying
the lands they cover or represent, and (the conveyances) must be acknowl-
edged or proved up as for record under the statutes, or their execution
must be proved on trial as at common law.

On the conveyance after the Waco & Northwestern Railway scrip had
been located.  Pasch. Dig., art. 997; Simpson v. Chapman, 45 Texas,
561–566; Hearne v. Gillette, 62 Texas, 25.

On the want of acknowledgment or proof of execution of the trust
deed to Gray & Botts, as well as the conveyance of date June 24, 1874,
of Flint, president, etc., to the plaintiff company.  Rev. Stats., art. 600;
Pasch. Dig., art. 5966; Acts 1874, p. 128, sec. 33; Muller v. Boone, 63
Texas, 92.

Deed of corporation must be acknowledged or proved to be recorded.
McFaddin v. Preston, 54 Texas, 405–407; McDaniel v. Needham, 61 Texas,
271, 272; Renn v. Samos, 33 Texas, 763; McEwen v. Den, 24 How., 242–
247; 4 Am. and Eng. Encyc. of Law, 238–244; Acres v. Moyne, 59 Texas,
623–627; Rev. Stats., art. 2257.

The trust deed to Gray & Botts and their deed to plaintiff conveyed no
part of the lands in suit.  Railway v. Whitaker, 68 Texas, 634, 635.

*T. D. Cobbs,* for appellees.— 1.  It was not error to permit certified
copies of the field notes from the General Land Office of the State of
Texas to be introduced as a link in the title of appellee, and to show a
prior location of the land.  Rev. Stats., arts. 2259, 2265; Hollingsworth

v. Holshausen, 25 Texas, 628; Galt Heirs v. Gallaway, 4 Pet., 332; Barker v. Swenson, 66 Texas, 407; Shifflet v. Morelle, 68 Texas, 391; Simpson v. Chapman, 45 Texas, 566.

2. It was not error to permit the introduction in evidence of the several conveyances from the Waco & Northwestern Railway Company to the Houston & Texas Central Railway Company, to-wit: first, deed of trust to Gray & Botts, trustees, signed by John T. Flint, president, and D. T. Chamberlain, secretary, dated July 6, 1871, and attested by the corporate seal; second, deed from Gray & Botts, trustees, to Houston & Texas Central Railway Company; third, certified copy of transfer from General Land Office of the State of Texas of the Waco & Northwestern Railway Company, by John T. Flint, president, and D. T. Chamberlain, secretary, dated June 24, 1874: because these conveyances placed the legal and equitable title to the certificates and the land in appellee. Pasch. Dig., art. 5024; Rev. Stats., arts. 2257, 2159–2265, 4259; Hollingsworth v. Holshausen, 25 Texas, 628; Galt Heirs v. Gallaway, 4 Pet., 332; Barker v. Swenson, 66 Texas, 407; Shifflet v. Morelle, 68 Texas, 391; Simpson v. Chapman, 45 Texas, 566; 1 Sayles' Civ. Stats., arts. 57 (subdiv. 5, note 20), 3808, 3802.

3. It was not error to admit the certified copy of the judgment in the suit of W. A. Benson v. L. T. Valentine, awarding to Benson the office of surveyor of Young Land District, dated October 20, 1873, for purpose of showing right of Benson as a *de facto* officer, at least for Young District, at the time when surveys were made for appellee, no other part of proceedings in the suit having been objected to. Hamlin v. Kassafer, 15 Pac. Rep., 779; Cox v. Railway, 68 Texas, 228; Morris v. Brinlee, 14 Texas, 289.

4. The court did not err in finding that the surveys of appellee were made by surveyor of Jack Land District, and finding generally for appellee for all the land sued for.

5. The court did not err in rendering judgment for appellee under the evidence, and holding that the surveys of appellee were made through the proper land district and were valid. 2 Sayles' Early Laws of Texas, art. 2559, sec. 5.

Organized into Land District February 12, 1858. Gen. Laws, pp. 190, 191.

Attached to Jack County. Gen. Laws 1866, p. 94.

*N. A. Steadman,* for appellees A. F. and S. H. Truitt.— The plaintiff's title rests upon surveys made on the 11th and 12th days of June, 1873, by W. A. Benson, district surveyor of Jack Land District, and were filed in the General Land Office September 12, 1873, and at neither date did said surveyor have authority to make the surveys, the land not being comprised in said Jack Land District at that time. Cox v. Railway, 68

Texas, 226; Tabor v. Commissioners, 29 Texas, 519; Linn v. Scott, 3 Texas, 67; Acts 1856, p. 41; Acts 1866, p. 96; Acts 1874, p. 94; Id., p. 164; Acts 1870, p. 22; Id., p. 54.

ACKER, PRESIDING JUDGE.—The Houston & Texas Central Railway Company brought this suit against Kimmarle & Hirsh to recover possession of and to remove clouds from the title to fourteen surveys of land of six hundred and forty acres each, in Childress County, claimed by plaintiff under locations and surveys made in June, 1873, by virtue of certificates issued to the Waco & Northwestern Railway Company.

Defendants claimed eleven of the surveys under patents issued in 1876 on locations and surveys made in 1875 by virtue of certificates issued to Beaty, Seale & Forwood, and answered by pleading their title to the eleven surveys, and disclaimed as to the balance of the surveys sued for.

Kimmarle & Hirsh impleaded their warrantors, A. F. Truitt and S. H. Truitt. Citations issued and were returned served on A. F. Truitt in Tarrant County, Texas, and on S. H. Truitt in Troup County, Georgia, where he was alleged to reside. Neither of the Truitts appeared.

The trial was without a jury and resulted in judgment for plaintiff for the lands sued for, describing them by metes and bounds, and canceling the patents under which defendants claimed "so far as any or all of said patents include any part or all of either of plaintiff's surveys as above set out," and judgment by default in favor of Kimmarle & Hirsh against A. F. and S. H. Truitt for $10,000 with interest from judgment, and for all costs.

Kimmarle & Hirsh assigned errors and perfected their appeal.

The Truitts also assigned errors as against both the plaintiff and defendants.

We will consider first the assignments presented by appellants, the first of which is as follows:

"The court erred in permitting the plaintiff to introduce in evidence certified copies of the field notes from the General Land Office, made for the Waco & Northwestern Railway Company, as evidence of a prior right or title to the lands in suit so far as the same conflicts with the land owned by defendants, for that the land owned by Kimmarle & Hirsh had been patented to Z. C. Collier, assignee, and defendants held under him by a regular chain of title, and it devolved upon the plaintiff to show a prior appropriation of the same lands by valid surveys theretofore made upon valid land certificates by a duly authorized surveyor; and the copies of the field notes introduced in evidence show that a part of the lands was surveyed by the deputy surveyor of Montague Land District, and that a part of the lands was surveyed by the deputy surveyor of Jack Land District; that such surveys for the Waco & Northwestern Railway Company were made in June, 1873, and all within what is now defined as Childress

County, and no authority for either of said district surveyors to survey in that county or section of country was shown by plaintiff, and defendants deny that plaintiff acquired any right by reason of such surveys."

This evidence was objected to upon the ground that "the surveys were not made by any duly authorized surveyor, authorized to make surveys of the land at the date plaintiff's surveys were made."

All of the fourteen surveys sued for by plaintiff were located and surveyed by the surveyor of Jack Land District, except one of them, survey No. 581, which it appears does not conflict with either of the eleven surveys claimed by defendants. The question, then, for our decision under this assignment is, did the surveyor of Jack Land District have authority to make the surveys under which plaintiff claimed?

The surveys in controversy are situated in Childress County, which was created in 1876 out of territory which was originally included in Young County Land District. The county of Young was created and its boundaries defined by acts of the Legislature of February 2 and August 19, 1856. The last named act provides "That for judicial purposes the territory north from the northeast corner of said county to Red River, thence west with said stream to the United States territory, thence south to a point west from the southern source of the Clear Fork of the Brazos, thence east to the source of such stream and down the same to the main Brazos, and thence in a direct line to the sourtheast corner of said county, thence north to the place of beginning, shall be under the jurisdiction of said county; and when said county is created into a land district it shall embrace the above described territory." Acts spec. sess. 1856, p. 41.

The record does not disclose the date of the organization of Young County, but it must have been prior to the 12th day of February, 1858, as two acts of the Legislature of that date refer to the Young County Land District as then existing (Gen. Laws 1858, pp. 190, 191); and under the provisions of the Act of March 20, 1848 (Gen. Laws, p. 153, Sayles' Early Laws, art. 1878), and the Act of January 26, 1858 (Gen. Laws, p. 66, and Sayles' Early Laws, art. 2690), each organized county became a separate land district. So that when Young County organized its county government by virtue of the foregoing statutes it became a separate land district, and its county surveyor became the district surveyor of Young County Land District, which embraced the vast territory included in the boundaries defined by the Act of August 19, 1856, *supra*. By virtue of this last mentioned act the county of Young during the continuance of the organization of its county government had dominion and jurisdiction for judicial and surveying purposes over the entire territory of Young County Land District.

Young County became disorganized in 1861 or 1862, and there seems to have been no provision made by the Legislature for the exercise of jurisdiction for either judicial or surveying purposes over its territory or

the territory of Young County Land District until 1866, when the two
acts of November 6 were passed.   One of these acts provided that all
counties that had been legally organized and had lost their county organ-
izations, for judicial and registration purposes should be "attached to the
organized county whose county seat is nearest the county seat of such
disorganized county."   Sayles' Early Laws, art. 3303.

It seems that under this statute the county of Young would have been
attached to Jack County for the purposes named in the act.   The other
act of 1866 attached Young County to the county of Jack "for judicial
and other purposes."   Sayles Early Laws, art. 3308.   Under these stat-
utes Young County remained attached to the county of Jack until April,
1874.   The territory of the Young Land District, as defined by the Act
of 1856, _supra_, included Hardeman and other unorganized counties, as
well as territory not included in the boundaries of any created county,
and unless this territory not included in the created counties in which
the surveys in controversy are situated was placed by the acts of 1866
with Young County under the jurisdiction of Jack County for surveying
purposes, then the surveyor of Jack District had no authority to make
the surveys under which the plaintiff claimed the lands; and from the
time of the disorganization of Young County, in 1861 or 1862, until its
reorganization, such territory was not subject to the jurisdiction of any
county for judicial, surveying, or any other purpose.

We can not believe the Legislature intended to leave any part of the
territory of the State without government, and not subject to the juris-
diction of the established machinery of government.   At the time of its
disorganization the county of Young had jurisdiction of this territory
for judicial and surveying purposes, and we think this jurisdiction was
transferred to Jack County by the Act of 1866 which attached Young
County to the county of Jack for judicial and other purposes.   By that
act Jack County succeeded to all the jurisdiction and powers which at-
tached or were incident to the county government of Young County at
the time of its disorganization, except in so far as that jurisdiction and
those powers had been specially vested in other counties, as illustrated in
the case of Cox v. Railway, 68 Texas, 228.   Alford v. Jones, 71 Texas, 522.

We think the court did not err in holding that the surveyor of Jack
Land District had authority to make the surveys under which the plaint-
iff claimed.

The second assignment of error is:   "The court erred in admitting in
evidence a certified copy of a trust deed of the Waco & Northwestern
Railway Company to Gray & Botts, offered by plaintiff as a link in its
chain of title, because it purports to convey lands, as well as other prop-
erty, real and personal, and it was not acknowledged by the grantor or
proved up for record, nor was any evidence tendered of its execution."

It appears from the bill of exception to the ruling upon which this as-

signment is predicated that the plaintiff "offered in evidence a deed in trust"—not a certified copy—and that it was objected to "because the same had not been acknowledged or proved up for record as required by law in conveyances of this character."

We must look to the bill of exception to see what the instrument offered was, and also for the grounds of objection to it. The bill of exception controls the assignment of error, and only the grounds of objection stated in the bill can be considered, although the assignment may be upon other grounds.

The question raised by the bill of exception and presented under the second assignment of error will be considered in connection with the third assignment of error, which is as follows: "The court erred in admitting in evidence a certified copy of a deed of conveyance from the General Land Office, signed by John T. Flint as president of the Waco & Northwestern Railway Company, conveying to plaintiff all the land scrip issued to the Waco & Northwestern Railway Company, and especially such certificates numbered from 1 to 752, such conveyance being dated June 24, 1874, and more than a year after said certificates had been located. Such conveyance had not been acknowledged by the grantor or proved up for record, nor had it been recorded, nor was there any evidence whatever of its execution offered on the part of plaintiff so as to bring the copy of such purported conveyance within the rules of evidence."

It appears from the bill of exception that this evidence was objected to "because the lands in controversy had been surveyed for the Waco & Northwestern Railway, and the scrip located before the date of such conveyance, and the conveyance did not conform to the law in regard to real estate, and it was not acknowledged or proved up for record as required by law." This assignment, as the preceding one, contains grounds of objection to the evidence not shown by the bill of exception. Only the grounds stated in the bill will be considered.

The only ground of objection to the admission of the deed of trust to which the second assignment relates, as appears from the bill of exception, was that it had not been acknowledged or proved for record, and the same ground of objection was urged against the admission of the instrument referred to in the third assignment of error.

The acknowledgment or proof of execution was not necessary to give effect to these instruments. By the thirty-fifth section of the Act of December, 1871, which was re-enacted in April, 1874 (Pasch. Dig., art. 5966; Rev. Stats., art. 600), the acknowledgment or proof of execution of a conveyance by a corporation was made necessary before such conveyance could be admitted to record, just as such acknowledgment or proof of execution is required before a conveyance by a natural person can be recorded; but this does not affect the validity of the conveyance, the execution of which

may be proved otherwise than by the officer's certificate that the grantor has acknowledged its execution, or that its execution has been proved by a subscribing witness in the manner prescribed by statute. While the surveys under which plaintiff claimed had been made before the instrument referred to in the third assignment was executed, the patents had not issued. The instrument was not only a conveyance of the land certificates but of "all and singular the several sections of square miles of land, amounting to sixteen sections for each mile of railroad built or to be built, to which said Waco & Northwestern Railway Company has or may be hereafter entitled by virtue of its construction under the terms of its charter and the laws of the State of Texas." We think the instrument was properly filed in the General Land Office, that the State authorities might be informed that the patents for the lands should issue to plaintiff as assignee of the original grantee, the Waco & Northwestern Railway Company. Being properly filed in the General Land Office, a certified copy of it, under the seal of that department, was admissible. Rev. Stats., art. 2253.

The instruments now under discussion were considered by this court in the case of Shirley v. Waco Tap Railway Company, 10 Southwestern Reporter, 543. We there held that the deed from the trustees named in the deed of trust referred to in the second assignment, and in which deed the property conveyed was described just as it is in the deed of trust, did not convey to the Houston & Texas Central Railway Company the lands donated by the State to the Waco & Northwestern Railway Company. We also held in that case that the instrument referred to in the third assignment of error did vest in the plaintiff in this case the title to the lands donated to the Waco & Northwestern Railway Company.

We conclude that the court did not err in admitting in evidence the instruments referred to in the second and third assignments over the objections urged against them; and if there was error in the ruling first complained of here, it would profit appellants nothing, as it has been determined in the Shirley case, *supra,* that the instrument referred to in the third assignment vested title to the lands in appellee, the Houston & Texas Central Railway Company.

The fourth assignment of error is: "The court erred in admitting in evidence the certified copy of a judgment of Jack County District Court, the judgment dated October 20, 1873, between W. A. Benson and L. A. Valentine, in the contest over the office of district surveyor of Jack Land District, as well as all the pleadings in said cause, because that plaintiff sought to show that Benson was at least a *de facto* surveyor; * * * and that cause did not show any authority in Benson to make surveys in Childress County in June, 1873. The defendants were not a party to such suit."

We understand appellants' contention to be, not that Benson was not

the legal surveyor of Jack Land District at the time the surveys were made for plaintiff, but that at that time the land on which the surveys were made was not within the jurisdiction of Jack Land District, and the surveys made by Benson under which the plaintiff claimed were made without authority in Benson to make them, and therefore void. We therefore think that the ruling here complained of was immaterial, and, in view of what we have said in disposing of the first assignment of error, could not affect the rights of appellants.

What has been said, we think, disposes of the other assignments presented by appellants, and all of the assignments presented by appellees A. F. and S. H. Truitt as against the Houston & Texas Central Railway Company, all of which relate to the authority of the surveyor of Jack Land District to make the surveys under which the plaintiff claimed.

The first assignment of error by appellees A. F. and S. H. Truitt against appellants Kimmarle & Hirsh is as follows:

"The court erred in rendering judgment against these appellees in favor of Henry Kimmarle and Jacob Hirsh for the sum of $10,000 with eight per cent interest per annum from the date of judgment, for the reason that there was no pleadings in the record authorizing the rendition of such judgment."

The pleading on which the judgment was rendered is as follows:

"And now come defendants in the above entitled cause and say that they hold and own the lands in controversy by and under a warranty deed dated April 25, 1883, from A. F. Truitt, who resides in Tarrant County, Texas, and Shorter H. Truitt, who resides in Troup County, Georgia. Wherefore, these defendants pray their warrantors in title be cited to appear and answer herein, and in case the plaintiff recovers of these defendants, that they have such judgment over against their warrantors as the law authorizes in such cases, and for all relief both general and special."

The judgment against the Truitts was by default.

In determining the sufficiency of a pleading to support a judgment by default the averments of the pleading are to be taken as proved or confessed; and if the pleading does not inform the court what judgment to render—that is, if it does not with sufficient certainty set forth the cause of action as to names of parties, dates, amounts, etc., to enable the court to render judgment without information *aliunde*—it is not sufficient, and the judgment can not be sustained.

Applying the test to this case, we think the insufficiency of the pleading too apparent to require discussion. It does not appear from the pleading that appellants ever paid the Truitts any consideration for the land. The court was compelled to get information outside of the averments of the pleading as to the amount for which the judgment was rendered. We think this assignment is well taken. Hall v. Jackson, 3 Texas, 305; Parker v. Beavers, 19 Texas, 410; Ricks v. Pinson, 21 Texas, 508.

Appellee S. H. Truitt, who was alleged to be a nonresident of this State and who was served with process in the State of Georgia as provided by articles 1230-33, Revised Statutes, under proper assignment of error contends that such service was insufficient to give the court jurisdiction of his person, and that the judgment against him is void.

The judgment is strictly personal. That service of process without this State against a defendant who is a citizen of and residing in another State will not sustain a strictly personal judgment is now settled by the decision in the case of York v. The State, 73 Texas, 651, following Pennoyer v. Neff, 95 United States, 723.

We are of opinion that the judgment of the court below in favor of the Houston & Texas Central Railway Comwany should be affirmed; that the judgment in favor of Kimmarle & Hirsh against A. F. and S. H. Truitt should be reversed; that appellants' suit against A. F. Truitt be remanded.

*Affirmed in favor H. & T. C. Ry. Co.*

*Reversed and remanded as to A. F. and S. H. Truitt.*

Adopted December 29, 1889.

ON MOTION FOR REHEARING.

STAYTON, CHIEF JUSTICE.—The motion for rehearing in this case will be overruled, except that the judgment will be so corrected as to affirm the judgment in favor of the Houston & Texas Central Railway Company and to revise the judgment in favor of Kimmarle & Hirsh against A. F. and S. H. Truitt, and in so far to remand the cause.