Houston, East & West Texas Railway Company v. R. B. Roach.

Decided October 28, 1908.

**1.—Bill of Exceptions—Statement of Facts—Evidence.**

A bill of exceptions showing objections made to evidence will be controlled by the statement of facts which showed the objection urged and that it was not made until after the question was answered; in such case it should have been taken by motion to exclude.

**2.—Evidence—Opinion.**

Defendant's witness testifying as an expert about the construction and operation of a heating device for cars, the explosion of which had injured a passenger, was asked on cross-examination whether it would explode if in proper condition. An objection that the matter on which his opinion was invoked was beyond the range of human knowledge was, it seems, not well taken.

**3.—Negligence—Res Ipsa Loquitur.**

Where a passenger was injured by the unexplained bursting of the steam heating apparatus of the car, it was proper to submit to the jury the issue of defendant's negligence, though there was no evidence thereof except by inference from the explosion due to some unknown cause.

**4.—Charge—Omission—Request.**

Failure to withdraw from the consideration of the jury an element of damages alleged but not proven, was not error, it seems, in the absence of a requested instruction.

**5.—Damages—Impairment of Hearing—Evidence.**

Where the explosion of the heating apparatus of a car drove hot steam and dirt into the face of a passenger, filling his ear therewith, and this was followed by impairment of hearing, the proof was sufficient to support a submission of such impairment as an element of damages resulting from the injury.

**6.—Negligence—Proof of Inspection and Repair.**

Evidence as to the inspection and repair of the heating apparatus of a

car considered and held insufficient to require a peremptory instruction for defendant, in the absence of a showing of the cause for its explosion not attributable to defendant's fault.

Appeal from the District Court of Harris County. Tried below before Hon. C. E. Ashe.

*Baker, Botts, Parker & Garwood* and *Lane, Kelley & Wolters,* for appellant.—Where the testimony of a witness as an expert is not based upon facts or circumstances connected with the accident, from which, through his peculiar knowledge, he is able to give an opinion, but is merely the statement of a conclusion based upon the accident itself, and without stating any facts or reasons for such conclusion, it is inadmissible. St. Louis, etc., Ry. Co. v. Nilson, 20 Texas Civ. App., 541; McRay v. Galveston, H. & S. A. Ry. Co., 32 S. W., 548; Gulf, C. & S. F. Ry. Co. v. Colbert, 31 S. W., 332; Schmick v. Noel, 72 Texas, 1; San Antonio & A. P. Ry. Co. v. Morgan, 24 Texas Civ. App., 58; East Tennessee & W. N. C. R. Co. v. Lindamood, 78 S. W., 99; Marcy v. Sun Mutual Ins. Co., 11 La. Ann., 748.

It is error to submit a charge upon a phase of the case which is unsupported by the evidence. Dulling v. Duehler Mfg. Co., 87 S. W., 333; Houston & T. C. Ry. Co. v. Gilmore, 62 Texas, 391; Texas & P. Ry. Co. v. Wisenor, 66 Texas, 674; Texas & P. Ry. Co. v. McCoy, 31 S. W., 304; Galveston, H. & S. A. Ry. Co. v. Faher, 63 Texas, 344; Cook v. Dennis, 61 Texas, 246; International & G. N. Ry. Co. v. Hall, 12 Texas Civ. App., 11; Galveston H. & S. A. Ry. Co. v. Arispe, 81 Texas, 521; San Antonio & A. P. Ry. Co. v. Robinson, 73 Texas, 284; Mexican Cent. Ry. Co. v. Lauricella, 87 Texas, 278.

It is the duty of the court to charge upon every issue made by the pleading and evidence. San Antonio & A. P. Ry. Co. v. Robinson, 73 Texas, 277; Willis & Bro. v. Whitsell, 67 Texas, 673; International & G. N. Ry. Co. v. Underwood, 64 Texas, 463; Western Union Tel. Co. v. Kendzora, 77 Texas, 257; Willis & Bro. v. Hudson, 72 Texas, 607.

*Heidingsfelder & Heidingsfelder, Lovejoy & Parker* and *Fisher, Sears & Campbell,* for appellee.—Where there is an agreed statement of facts (as in the case at bar) the statement of facts on the point controls and governs the bill of exceptions. Wiseman v. Baylor, 69 Texas, 66, 67; Ramsay v. Hurley, 72 Texas, 200; Galveston, H. & S. A., etc., Ry. Co. v. Parsley, 6 Texas Civ. App., 159; Scott v. Childers, 24 Texas Civ. App., 351; Byers v. Wallace, 25 S. W., 1046, 1047; Gulf, etc., Ry. Co. v. Wedel, 42 S. W., 1030; Wright v. Solomon, 46 S. W., 58.

In revising ruling on admission of testimony appellate courts will consider only objections taken at trial. Rector v. Hudson, 20 Texas, 236; Kimmarle v. Houston & T. C. Ry. Co., 76 Texas, 686; Stephens v. Motl, 81 Texas, 118.

The testimony of witness Bonewitz was competent, and properly admitted. McCray v. Galveston, H. & S. A. Ry. Co., 89 Texas, 168.

The charge was more favorable to appellant than it was entitled to, in view of the absence of any explanation by appellant company, which was exclusively and peculiarly in possession of all the facts that would tend to throw any light upon the cause of the explosion. Washington v.

Missouri, K. & T. Ry. Co., 90 Texas, 314; McCray v. Galveston, H. & S. A. Ry. Co., 89 Texas, 168; Gaunce v. Gulf, C. & S. F. Ry. Co., 48 S. W., 525; Ryan v. Missouri, K. & T. Ry. Co., 65 Texas, 13; Galveston, H. & S. A. Ry. Co. v. Horne, 69 Texas, 643.

RICE, ASSOCIATE JUSTICE.—Appellee Roach, plaintiff below, filed this suit against appellant for the recovery of damages for personal injuries alleged to have been sustained by him while a passenger upon appellant's railway, occasioned by the explosion of a drum to a Baker heating apparatus, which was used for heating the coach in which he was riding.

He alleged he was a passenger on appellant's railway from Houston to Humble on the evening of January 3, 1905; that the car upon which he took passage was heated by an apparatus consisting of a stove, drum and pipes therefor, which were in such an unsafe and defective condition, and were so negligently handled by the servants in charge of said train, that the same exploded, causing steam, water, dirt and other contents thereof to strike plaintiff in and about the head and neck with great force and violence, seriously injuring him in the muscles and nerves thereof, and in the drum of both of his ears, whereby his hearing in the left ear was totally destroyed and the hearing in the right ear greatly impaired. He averred that he was unable to specify with greater particularity the cause of the bursting or explosion of said heating apparatus, but that when ordinary care is used in the construction, maintenance and operation of such appliances, they do not burst or explode, and that the defendant having had exclusive possession thereof, both before and after said explosion, should and did know the cause thereof. That in consequence of said explosion and the injury inflicted upon him he was put in great fear of life and limb, had partially lost the use of the muscles controlling his lower jaw; that the hearing of his left ear was entirely destroyed, and that of his right ear greatly impaired, and that he had been caused to suffer great mental and physical pain by reason thereof; and that said injuries were permanent and incurable, lessening his earning capacity in the future, to his great damage, etc.

Defendant replied by general demurrer and general denial. A jury trial resulted in a verdict and judgment thereon in favor of the plaintiff in the sum of $6,500, from which judgment this appeal is prosecuted.

The first assignment of error complains of the action of the court in overruling defendant's objection to the following question asked the witness Bonewitz: "If those heaters were in proper condition, and all the apparatus and pipes connected with those safety valves, and all are in proper condition, they won't explode, will they?" To which the witness answered: "Well, I don't suppose they will." Appellant insists, by its proposition thereunder, that where the answer of a witness testifying as an expert is not based upon facts or circumstances connected with the accident, from which, through his peculiar knowledge, he is able to give an opinion, but is merely the statement of a conclusion, based upon the accident itself, and without stating the facts or reasons for such conclusion, the same is inadmissible. By reference to the statement of facts it appears that no objection was made to the above ques-

tion and answer until after the question had been answered, then the following objection was made by defendant's counsel: "I want to object to that question. I think it goes beyond the range of human knowledge." By reference to the bill of exceptions reserved by appellant to this testimony it is shown that defendant by its counsel objected to the same upon the ground "that it was beyond the range of human knowledge for any person to tell whether or not, under such conditions, said heater would have exploded, and that said testimony was incompetent," but the bill does not affirmatively show whether this objection was made before or after the answer of the witness to said question. It appears that this testimony was elicited upon cross-examination of this witness, who had given a comprehensive and detailed statement of the construction and working of these heaters; and the record fails to show that any objection was made to said testimony on the score that said witness was not an expert, or that he was not qualified to give a correct and scientific opinion, or that he was merely stating a conclusion, but in discussing this objection appellant treats said witness as an expert, both in his assignment and brief. There was no motion made to exclude this testimony. In this condition of the record we must hold that what occurred, as shown by the statement of facts on the point in question, would control and govern the bill of exceptions. (Wiseman v. Baylor, 69 Texas, 66; Ramsey v. Hurley, 72 Texas, 200; Wright v. Solomon, 46 S. W., 58.)

Following this rule, the only objection that we can consider is that made on the trial, as shown by the statement of facts. (Rector v. Hudson, 20 Texas, 236; Kimmarle v. Houston & T. C. Ry. Co., 76 Texas, 686; Stephens v. Motl, 81 Texas, 118), and which objection we hardly think was a legal one, but, if so, it came too late, and, in the absence of a motion to exclude, we hold that appellant is not now in position to complain of the admission of said testimony, and overrule said assignment.

The court in its charge, among other instructions, gave the following: "If you should believe from a preponderance of the evidence that the plaintiff, on or about the third day of January, 1905, and while a passenger, as alleged, on one of defendant's trains, received injuries substantially as by him alleged, and that said injuries were caused by the bursting of the drum connected with the heating apparatus in said car, and that said heating apparatus was then and there under the management and control of the defendant company, and its agents and servants, and was in an unsafe and defective condition, or badly and unskillfully handled and managed by the defendant's servants in charge of the train, and that in the ordinary course of things such drum would not have burst if the defendant company, and its agents and servants in charge thereof and having the management thereof, had used proper care with respect to the condition of said heating apparatus, or the handling and management thereof; and if you further find and believe from the evidence that the alleged bursting of the drum was directly caused and occasioned by such alleged unsafe or defective condition of the heating apparatus or alleged unskillful handling thereof by the defendant's said servants, and you further believe that such alleged unsafe or defective condition of the heating apparatus, or such alleged unskillful handling of the heating apparatus, constituted negligence on the part of the de-

fendant company, or its said agents or servants (as the term negligence has heretofore herein been defined) ; and you further believe from the evidence that as the direct and proximate result of such negligence, if any, plaintiff received injuries substantially as by him alleged, then find for the plaintiff and assess his damages as hereinafter instructed in the fifth paragraph hereof."

Appellant insists that said charge was erroneous, because, first, it contends that there was no evidence whatever that said heating apparatus, at the time of said accident, was in an unsafe and defective condition. Second, because there was no evidence whatever that said apparatus had been badly and unskillfully handled and managed by defendant's servants in charge of the train, nor that said agents and servants had not used proper care in the inspection of said heating apparatus or in the handling and management thereof; and third, because there was no evidence that the bursting of said drum was caused and occasioned by any unsafe or defective condition of the heating apparatus or by any unskillful handling thereof by the defendant's said servants.

Briefly summarized, the evidence discloses that the heating apparatus in use by appellant consisted of a stove and connections, known as a Baker heater. This stove had a furnace inside of it, and above it and connected therewith was a drum or cylinder. Coils of pipe were placed inside of the furnace of the stove, but extended around and from it on both sides of the car. Above the furnace of the stove is located said expansion drum. It is made of cast iron, is about ten inches in diameter and about twenty inches high, the bottom being about twelve inches above the stove, and it extends upwards to within four inches of the roof of the car. The pipe from the furnace entered this drum at the bottom, but did not go through, but another pipe extends from the top of the drum to the roof of the car, connecting with the safety valve on the outside thereof. The water, being pumped into this system of pipes from below, rises up about half way in the drum, and when fire is started in the stove the heat is transmitted to the water in the pipes and to the drum, thereby causing steam in the drum and the pipes by which the car is heated. When the valve is working properly, any excess of steam which is generated in the drum escapes therefrom through said valve, by which the same is regulated; that the valve was an automatic contrivance, and that the appliance was easily managed. There was a rubber ball used on the safety valve which was intended to expand with heat and thereby permit the escape of steam through the valve, but which could be screwed up so tight that it would burst, and would not be of any service; that if it did burst there would be an opening from the expansion drum to the atmosphere; but it appeared in the same connection that, if said valve should fail to properly work, that the excess of steam generated in the heater would either burst the pipes or the drum.

On the evening in question, soon after leaving Houston, the drum of this heating apparatus exploded, blowing the top thereof through the roof of the car, and making therein a hole some twelve inches wide by sixteen or eighteen inches long, filling the car with smoke and steam, and throwing upon plaintiff the contents thereof, injuring him as described in his petition. While it appears from the evidence that apparatus of this make was generally used by railways for the purpose

of heating their coaches, and that the same is regarded as the best and most approved appliance for such purpose, still it appears from the evidence in this case that on the evening shortly before this car started from Houston the attention of appellant's car foreman, who had the general management and supervision of its cars, was called to the defective condition of this heating apparatus, and that the steam was escaping therefrom through this safety valve. Before the car left the shed he undertook to remedy this defect by putting a new rubber ball in the valve, but upon fire being again built in the stove it was discovered that the valve was still leaking on the top of the car and steam escaping therefrom; that this was some thirty minutes before the car was scheduled to start from Houston; that the valve was again removed and another obtained and placed thereon; when the fire, which had been removed therefrom, was again started in the stove, and seeming to operate all right, he cleared the conductor and left for home. This was within about ten minutes of the departure of the train. No further examination was made of said apparatus.

Although several of the operatives of appellant, among others the air-brake inspector, whose duty it was to look after these heaters, testified concerning this matter, none of them testified, except one Last, to having seen the car upon its return, and while it is true he described its appearance and condition then, still neither he nor any of them undertook to explain or give any reason in explanation of said explosion. It was shown that these valves had given much trouble; that the balls connected therewith were sometimes too soft and sometimes too hard; that, when too soft, the steam would escape through them, and that if too hard they would not permit the escape of steam through the valves. It was not shown that the particular ball or valve last placed upon this apparatus before leaving Houston on that evening had been *tested at the shops before it was used. And it appeared necessary to examine the different parts of said heaters to see whether or not they were in good condition, and likewise necessary from time to time, to replace these rubber balls, and to inspect them for the purpose of ascertaining whether they are of the right kind and would perform their functions;* but the record fails to disclose that any such inspection was in fact actually made. It was shown by the car foreman of appellant that if these heaters were in proper condition, and the apparatus and pipes connected with the safety valve were in proper condition, that they would not likely explode.

It is insisted by counsel for appellee that the facts presented upon the trial of this case warranted the giving of the charge in question, and that the rule of "res ipsa loquitur" applies. So that the question for our determination is whether, there being no direct and positive evidence going to show or establish negligence on the part of appellant relative either to the construction or condition of this heating apparatus, or in the care and handling thereof, negligence could be inferred from the facts and circumstances in evidence connected with the explosion itself, whereby it became the duty of the court to submit the case to the jury in a charge predicated thereon.

In Bien v. Unger, 46 Atl., 593, it is said that "the phrase 'res ipsa loquitur' imports that the plaintiff has made out a prima facie case, without any direct proof of actionable negligence."

Mr. Cooley on Torts, vol. 2, 3d ed., p. 1424, says: "The rule known as res ipsa loquitur may be thus stated: When the thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the .absence of an explanation by the defendant, that the accident arose from the want of care. In speaking of this maxim the Supreme Court of Pennsylvania says: 'The maxim, res ipsa loquitur, is itself the expression of an exception to the general rule that negligence is not to be inferred, but to be affirmatively proved. The ordinary application of the maxim is limited to cases of an absolute duty or an obligation practically amounting to that of an insurer. Cases not coming under one or both of these heads must be those in which the circumstances are free from dispute, and show not only that they were under the exclusive control of the defendant, but that in the ordinary course of experience no such result follows as that complained of. It is sometimes said that the mere happening of an accident in this class of cases raises a presumption of negligence, but this is hardly accurate. Negligence is never presumed. If it were it would be the duty of the court, in the absence of exculpatory evidence by the defendant, to direct a verdict for the plaintiff, whereas in these cases the question is for the jury. *The accurate statement of the law is not that negligence is presumed, but that the circumstances amount to evidence from which it may be inferred by the jury.* In cases where the duty is not absolute, like that of the common carrier to exercise the highest care and skill in regard to the safety of a passenger who has committed himself to its charge, but arises in the ordinary course of business, it is essential that it shall appear that the transaction in which the accident occurred was in the exclusive management of the defendant, and all the elements of the occurrence within his control, and that the result was so far out of the usual course that there is no fair inference that it could have been produced by any other cause than negligence. If there is any other cause apparent to which the injury may with equal fairness be attributed, the inference of negligence can not be drawn.' "

In Boyd v. Portland Electric Co., 41 Ore., 336, 68 Pac., 810, it is said: "Res ipsa loquitur is a maxim of evidentiary potency and consequence, and serves to imply or raise a presumption of negligence as a fact, where, from the physical facts attending the accident or injury, there is a reasonable probability that it would not have happened if the party having control, management or supervision, or with whom rests the responsibility for the sound and safe condition of a thing, property or appliance which is the immediate cause of the accident or injury, had exercised usual or proper care and precaution with reference to it."

"The phrase res ipsa loquitur, which, literally translated, means that the thing speaks for itself, is merely a short way of saying that the circumstances attendant upon an accident are of themselves of such a character as to justify a jury in inferring negligence as the cause of that accident; and the doctrine which it embodies, though correct in itself, may be said to be applicable to two classes of cases only, to wit: First, when the relation of carrier and passenger exists, and the accident arises from some abnormal condition in the department of actual transportation;

second, where the injury arises from some condition or event that is in its very nature so obviously destructive of person or property, and is so tortious in its quality, as in the first instance, at least, to permit no inference save that of negligence on the part of the person in the control of the injurious agency. There must be reasonable evidence of negligence, but when a thing is shown to be under the management of the defendant or its servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of an explanation by defendant, that the accident arose from want of care. For instance, where a piece of coal flew from the tender of a passing train and injured a section hand who was standing at a reasonably safe distance from the track, this, in the absence of explanation, and under the doctrine of res ipsa loquitur, constituted sufficient negligence on the part of the company to establish a prima facie case, notwithstanding that the coal was properly loaded on the tender. (Vol. 7, pp. 6136-7, Words and Phrases.)

The doctrine of res ipsa loquitur, as explained by the Court of Appeals of New York in a late utterance on the subject in Griffen v. Manice, 59 N. E., 925; 166 N. Y., 188; 52 L. R. A., 922; 82 Am. St. Rep., 630, relates simply to the probative force of evidence. It does not dispense with the necessity of evidence of the defendant's negligence in any case, but, on the contrary, expressly requires it. *In its application in those cases where the accident is such as in the ordinary course of business does not happen if reasonable care is used, the effect of the rule is that evidence of attendant circumstances is sufficient for an inference of negligence, without proof of any special negligent act.* But the attendant circumstances shown must be such as will warrant an inference not of negligence only, but of defendant's negligence.

In Griffen v. Manice, *supra,* quoting approvingly from section 59 of Shearman & Redfield on Negligence, it is said: "It is not that in any case negligence can be assumed from the mere fact of the accident and injury, but, in these cases, the surrounding circumstances which are necessarily brought into view by showing how the accident occurred contain, without further proof, sufficient evidence of defendant's duty and his neglect to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof of negligence that the injured person is able to offer, or that it is necessary to offer."

The judge in his opinion also quotes approvingly from Benedick v. Potts, 88 Md., 52; 40 Atl., 1067; 41 L. R. A., 478, and concludes: "The res includes the attendant circumstances, and, so defined, the application of the rule presents principally the question of the sufficiency of circumstantial evidence to establish or to justify the jury in inferring the existence of the traversable or principal fact in issue—the defendant's negligence. The question in every case is the same—whether the circumstances surrounding the occurrence are such as to justify the jury in inferring the fact in issue."

In discussing the burden of proof in connection with this subject, Mr. Elliott, in his work on Railroads, vol. 4, 2d ed., p. 573, section 1644, says: "As in other cases, one who sues a railroad company for personal injuries received while on its train as a passenger, has, of course, the

burden of proving all the material facts necessary to constitute his cause of action, including negligence on the part of the company. But negligence may often be inferred from circumstances, and proof of the accident and injury may sometimes not only justify such an inference, but may also give rise to a presumption of negligence on the part of the company and make a prima facie case against it, so far as proof of its negligence is necessary. It is sometimes said the fact that a passenger is injured on a carrier's train is a presumption of negligence on its part, and makes a prima facie case, so far as such negligence is concerned, sufficient to cast the burden upon the carrier to show that it was not guilty of negligence, and to entitle the plaintiff to recover if free from contributory negligence, unless it rebuts such presumption. But in most of the cases in which such a broad statement of the rule was made it was unnecessary to state it in such general terms, and the facts were such as to show that the injury could not have well been inflicted but for the negligence of the company or the like."

But the same author, section 1644, p. 576, vol. 4, says: "It is therefore too broad a statement of the rule to say that in all cases. a presumption of negligence on the part of the carrier arises from the mere happening of an accident or an injury to a passenger, regardless of the circumstances and the nature of the accident. *The true rule would seem to be that when the injury and circumstances attending it are so unusual and of such a nature that it could not well have happened without the company being negligent; or when it is caused by something connected with the equipment or operation of the road over which the company has entire control, without contributory negligence on the part of the passenger, a presumption of negligence on the part of the company usually arises from the proof of such facts in the absence of anything to the contrary, and the burden of going forward and producing evidence in order to escape liability is then cast upon the company to show that its negligence did not cause the injury."*

In volume 7, Wards and Phrases, p. 6138, are collected some cases illustrating the application of this rule. Among them are the following: Where a passenger is injured in the falling of a lamp shade; where the injury was caused by the falling of a ventilator window; the falling of an upper berth in a sleeper from an unexplained cause was held prima facie evidence of negligence on the part of a steamship company; the falling of a fire extinguisher attached to the side of a car, resulting in injury to the plaintiff was held to establish prima facie case of negligence against the defendant, in the absence of evidence explaining the occurrence; where the plaintiff was injured by the sudden starting of a machine, contrary to its ordinary mode of operation, it was held that such action of the machinery tended of itself to show want of care in its construction or condition, the court saying that some catastrophes are of a nature such as to carry in the mere statement of their occurrence an implication of negligence.

In the case of McCray v. Galveston, H. & S. A. Ry. Co., 89 Texas, 168, which was a case by the plaintiff and her children to recover damages for the death of husband and father, the facts showed that the deceased was in the employ of the railway as a brakeman, and at the time of his death was sitting on a car loaded with steel rails on defendant's

road, going into the city of San Antonio; that the car was one of a train of a number of cars loaded with steel rails, together with a box car and caboose, which was running at a speed of twenty-five miles an hour, when one of the steel rails fell from a flat car in front of the one upon which deceased was riding; one end of the rail struck the ground, and the other, resting on the side of the car, "swept the whole north side of the train," striking the deceased, who was sitting on the north side of the car, killing him instantly. The proof showed that, soon after the arrival of the train in San Antonio, the car from which deceased fell was examined by the conductor, and it was found that all of the standards or guards remaining on it were in good condition, but it was not shown how many were upon it prior to the accident, but the conductor stated that he knew that there were not less than four of such guards on each side when he received the car, because he did not consider it safe with less than four guards on each side, and would not have received it with less. In delivering the opinion of the court, passing upon the assignment wherein it was claimed that the court erred under the facts related in directing a verdict on behalf of the defendant, Mr. Justice Brown elaborately discusses the rule of "res ipsa loquitur," saying, among other things: "It is a general rule that, when a servant sues his master or employer for damages arising from injuries caused by the negligence of the latter, the plaintiff must prove the negligence of the defendant, and that proof of the accident and injury alone will not be sufficient to authorize recovery. However, it is well settled by authority that the circumstances attending the injury may be sufficient to establish the fact of negligence without any direct proof thereof." Quoting approvingly from the case of Scott v. London & St. K. Ry., 3 Hurl. & Col. (Ex. Ch.), 594, wherein it is said that there must be reasonable evidence of negligence; *but where the thing is shown to be under the management of the defendant or its servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence in the absence of explanation by the defendant that the accident arose from want of care.* He cites numerous authorities in support of the doctrine, and holds, in passing upon said instruction, "that it was the duty of the railroad company to place the cars in the hands of its employes in a condition reasonably safe to be handled by them in the course of transportation. If the car was not in such condition, either from defects in the car itself, or on account of improperly loading the rails thereon, and the injury to the deceased resulted from such unsafe condition, the defendant would be liable for damages occasioned by reason of the injury. This car was in the keeping and under the control of the defendant, the loading of the rails was done by it or its servants, and if the accident was such that it would not probably have occurred in the ordinary transportation if the car had been properly loaded, the circumstances attending the accident would furnish sufficient evidence to authorize a verdict for the plaintiff, if no explanation were given by the defendant. If there be an explanation which would excuse the defendant, it has the means of making the proof, and should do so, and the plaintiff should not be required to negative every circumstance which might possibly arise, whereby the accident might have occurred;" holding that the District Court, under the cir-

cumstances disclosed by the record, erred in instructing the jury to find a verdict for the defendant, and that the case should have been submitted to the jury under proper instructions to determine from the evidence whether or not the defendant had been guilty of negligence, and whether the negligence resulted in the death of the deceased.

In Washington v. Missouri, K. & T. Ry. Co., 90 Texas, 314, Chief Justice Gaines announces the same rule relative to the duty of explanation under the circumstances on the part of the carrier.

With reference to the duty of the trial court to submit the question of negligence to the jury, see Gaunce v. Gulf, C. & S. F. Ry. Co., 20 Texas Civ. App., 33; also Sproule v. St. Louis & S. F. Ry. Co., 91 S. W., 657.

It will be observed that the charge complained of in this case put the burden of proof throughout upon the plaintiff, leaving it to the jury to find whether or not, under all the circumstances of the case, the defendant was guilty of negligence; and, unlike the case of San Antonio & A. P. Ry. Co. v. Robinson, 73 Texas, 284, it did not even suggest that any presumption obtained in favor of the plaintiff by reason of the accident or circumstances surrounding it.

We are inclined to believe, applying the law as announced by the foregoing authorities that, under all the facts and circumstances in evidence, it was the duty of the court to have given the charge complained of, and therefore overrule this assignment.

By its third assignment of error appellant contends that the court erred in failing to instruct the jury that plaintiff was not entitled to recover for any impairment of his hearing in his right ear, because, this being one of the injuries complained of in plaintiff's pleading, and there being no evidence to the effect that the hearing in his right ear was affected by reason of the accident complained of, but the evidence, on the contrary, showed that such injury could not have been the result of said accident. Appellee contends, however, in reply to this position on the part of appellant, that if the charge of the court was not sufficient upon this subject, it was appellant's duty to have asked a special charge upon the point, and, having failed to do so, is denied the right to complain. We are inclined to agree with this contention.

But, aside from this, we differ with appellant in its contention that there is no evidence to warrant such a charge. Plaintiff testified that the effect of the explosion was to throw slush and stuff out of the pipe over his face, side and head; that his head and left ear were filled with this stuff, to wit: the slush and mud that came from the pipe; that it completely destroyed the hearing of his left ear, and that he could not hear out of the right ear as well as he could prior to the accident; that since the accident he was unable to locate sounds, and that prior to the accident he had no defects in either ear. It was shown by a physician that the left ear indicated that the hearing was very much below normal, showing almost an entire absence of hearing in that ear, and that the right ear showed retraction of the drum with decreased hearing; that the condition of the right ear was such that the drum membrane was retracted, and that he only had about half normal hearing in that ear, and that such condition in both ears was permanent; that there was nothing

connected with his injury from which he could tell how long this condition had existed.

From this it appears that there was sufficient evidence of injury to the right ear to have submitted this charge.

Appellant by its fourth assignment complains of the action of the court in refusing to give a peremptory instruction for defendant requested by it; and by its fifth assignment assails the verdict and judgment of the court on the ground that the evidence was insufficient to warrant the same.

What we have heretofore said, we think, is a sufficient answer to the objection urged by this assignment.

In replying to the contention as to the insufficiency of the evidence it will suffice to say that, while in a general way it is shown on the part of appellant that there was an effort made on the evening that the car went out to repair the leaking valve, still there is no evidence showing an inspection or test made at the time as to the sufficiency of said valve or the rubber ball that was finally placed in the heating apparatus, and no testimony to show this rubber ball or valve used contained such qualities or qualifications as would cause them to properly perform their respective functions, so as to open the safety valve and permit the escape of any excess in the accumulation of steam in the pipes or drum. Nothing is shown relative to the volume of fire used at the time, whether ordinary or normal, or to the contrary; the sufficiency of the water in the coil at the time of the explosion was not shown. While it appears in a general way that this apparatus had been inspected, still it was not shown with any degree of certainty or satisfaction as to the character and completeness thereof nor as to when the last inspection or test had been made; and *there is proof to the effect that if the same was in good condition, and was properly handled at the time of the injury, that the accident would probably not have occurred.* Taking this in connection with the explosion itself, together with the fact that the law requires the utmost care and prudence on the part of the carrier to avoid negligently injuring its passengers and the issue of negligence "vel non" having been submitted to the jury by a clear and appropriate charge, we are loath to say, in the absence of explanation on the part of the appellant as to how the accident occurred, that the evidence is insufficient to support their finding. No complaint is made that the verdict is excessive, and, in view of the evidence, we think none could be. We therefore overrule this assignment.

After a careful consideration of the questions presented by the record, aided by full and elaborate briefs of counsel on both sides, we fail to find any such error in the record as requires a reversal of the judgment of the court below; and, so believing, the same is in all things affirmed.

*Affirmed.*

Writ of error refused.