Opinion of the court, by
Judge Lane:
In the case of the Bank of the United States v. Schultz, 2 Ohio, 495, this court decided unanimously, that the owner of land might call into action the power of a court of chancery to prevent its sale by execution, even where no title could be conferred. We concur in that decision.
The complainant asserts that the sale he seeks to prevent would confer no title, because he insists that by the statute of 1822, vol. xx. 75, the lien of Beaver’s judgment is taken away, as well as to purchasers as to judgment creditors. This precise question came before the court in the case just referred to, and was not adjudicated upon account of an equal division of opinion among the then members of the court. The present members of the court unite in the conclusion that section 16 of that statute imposes no limitation upon a judgment lien, except in its operation upon other judgment creditors.
The evils which at that time required legislative interference, arose from the financial embarrassments that followed the termi« *163 nation of the war. > Debtors resisted payment under the hope that time would add to the value of property; creditors hesitated to accept satisfaction in a currency of diminishing value. Purchasers are rarely found in a falling market. From these causes, judgment liens had accumulated upon the lands of debtors, that created most perplexing difficulties to creditors. Sales by execution were retarded by reason of the uncertainty of interfering claims. To remedy these difficulties, and to prevent senior judgment creditors from placing real estate beyond the reach of junior judgments without appropriating it in satisfaction of their own, the legislature, by this section of the law, assumed *to settle the privity and extent of judgment liens. The protection of purchasers, by contract with the debtor, was no part of their object.
To carry into effect their intention, distinct provisions were made for different classes of judgment creditors. To such as had levied and made repeated efforts to sell, they offered the privilege of abandoning the old, and making a new levy, after which their liens should present no obstacles to junior judgment creditors, who were seeking to subject a portion of the debtor’s real estate to the satisfaction of their judgments. On such as were content with a subsisting levy, the same restriction was imposed upon the extension of their liens to other parts of the debtor’s lands, as if a new levy were made. In this alternative, although the persons from whom the operation of the lien is removed, are not expressly declared, we consider it a part of the same sentence as the former provision, and subject to the qualification before expressed in it. No reason is presented to us, why a creditor content with his levy should be more limited in his rights than he who makes a new one. We can not be persuaded that any such limitation was intended, when there was offered to the same creditor the privilege of the same alternative of making a new levy, and extending it over the same land, maintaining the lien to its full extent against all except senior judgments. We, therefore, can not adopt the position of the complainant’s counsel, that, in this case, the lot purchased from the debtor, after the levy made, is exempt from the judgment lien.
The next position taken by the complainant, in support of his bill, is, that when, from the lapse of time, a judgment becomes dormant, the lien is extinguished.
By section 2 of the statute of 1815, in force when the judgment under consideration was rendered, the lien created is general in its *164 terms, and without limit as to its duration. Nevertheless, when the judgment becomes dormant, the means of enforcing the lien are-suspended, because they necessarily slumber with the judgment. But when the judgment is revived, it is revived with all its incidents. There is no new judgment recovered on the scire facias, but the old one is called into action. The form of execution ^adopted in practice, requires the sheriff to make the money, for want of goods and chattels, from lands owned by the debtor at the date of the-judgment. The statute declares that the sale shall vest as good a title in the purchaser as the debtor had, whilst the land was liable-to the satisfaction of the judgment. So far as the debtor is concerned, the lien of the revived judgment exists in all its original force.
But it does not follow that the right of others acquired, or subsisting under the dormancy of the judgment, are subordinate to-the revived lien. In a country where land is one of the most familiar and ordinary subjects of trade, the policy of the law does-not favor liens which impose embarrassments on their transfer. The purchaser who acquires title to land at the time when no lien exists, or at a time when, by the creditor’s delay, a once existing-lien becomes dormant, appears to us to have an equity preferable to him who has indulged in delay. In treating with the debtor he has a right to rely upon the presumption that a dormant judgment is satisfied.
The lien of the creditor, at this time, is indefinite and contingent. It is not a subsisting interest in the lands, but a power to set up-an interest that may never be exercised. He may prefer to enforce payment of his debt against other property, or against the-person of the debtor. The purchaser has no means in his hands to guard against future dormant claims. It is, therefore, better that such sleeping creditors should sometimes lose their money, than that titles acquired in good faith, while they slumbered, should be rendered precarious. Besides, the judgment is at best-but a security, always postponed to a specific lien, unless such lien be junior. 2 Pow. Con. 61; Amb. 252; 2 Ohio, 527. In this case Beaver’s judgment is not the eldest lion, unless connected by relation with the lien of the dormant judgment. This relative connection, we think, ought not to be made at the expense of intervening rights.
No authority is produced which countenances the position, that the judgment creditor’s lien is to be preferred to that of a bona *165 fide purchaser. The case of Ogden v. Arlington, 1 Mod. 217, only decides, that a tenant by elegit, after actual extent, has such an interest as may be cut off by fine, *and that before extent he has no such interest. The case of Erby v. Erby seems equally remote in its application. But the precise point has been adjudged in the Yirginia Court of Appeals (2 Call, 103), and furnishes authority for our conclusion. We fully accord with the •opinion there expressed, “ that a different doctrine would raise the most vexatious embarrassments on the transfer of real estate, and would be contrary to the plainest principles of equity.”
This view of the case is decisive of the controversy between the parties. It leads us to hold that Norton’s title to the lot ought to be protected against the assumed lien of Beaver’s judgment. The injunction must be made perpetual.