## FLOYD H. COOLEY, *impl. &c.,*

### *v.*

### WILLIAM SCARLETT.

1. EVIDENCE IN CHANCERY—*mode of preserving the same.* Since the act allowing oral testimony in chancery, it has been a settled practice to preserve the evidence by recitals in the decree, if counsel prefer that method.

2. RECITALS IN DECREE—*how far conclusive.* The statements of the evidence in the decree can no more be questioned by the appellate court, than can those of a bill of exceptions in a common law case.

3. SAME—*power to correct, and when.* If a Circuit Judge has inadvertently signed a decree containing erroneous recitals of the proof, he may, even at a subsequent term, correct it.

4. PARTIES—*in chancery.* One Stephenson negotiated with Scarlett for the purchase of certain lands, which the latter was to convey to one Cooley, in exchange for which Stephenson was to give to Scarlett a mortgage upon certain premises, and also a deed from Cooley to another tract of land, held by the latter in trust for Stephenson, Scarlett and Cooley, both made their

Syllabus.     Opinion of the Court.

deeds which were left with a third person as a depositary, not to be delivered, however, until Scarlett should be satisfied with the title to the mortgaged premises. Scarlett was not satisfied with the title, and after ineffectual attempts by the latter to get possession of his deed, Cooley, by fraudulent means, and without any connection with Stephenson in that regard, obtained the deed from the depositary, and conveyed the land to another person. *Held,* that in a suit in chancery by Scarlett against Cooley and his grantee, to cancel these deeds, Stephenson was not a necessary party.

5. CONFLICT OF LAWS—*jurisdiction of courts in one State over titles to lands in another State.* Whether a conveyance of land, which has been duly recorded in the State where the land is situate, is a nullity, even upon the ground of fraud, depends upon the local laws of such State. The courts of another State have no power to annul such a conveyance.

6. But if a court of equity in this State has obtained jurisdiction of the person of one who has obtained a deed for land lying in another State, by fraud, although he may have procured the deed to be recorded, the court may decree that he, and his grantee, who may not be in a condition to be protected as a *bona fide* purchaser, shall release all their claims acquired under the deed fraudulently obtained.

7. And if they should refuse so to do, they may be attached for contempt and held in custody until they execute the decree.

8. And if, in the mean time, it should appear that they are seeking to encumber the title by conveyances to third persons, that also might be treated as a contempt and punished accordingly.

9. Or if they should go beyond the jurisdiction, the court can appoint a special commissioner to make the release in their stead.

APPEAL from the Circuit Court of Kane county; the Hon. ISAAC G. WILSON, Judge, presiding.

The case is sufficiently stated in the opinion of the court.

Mr. B. F. PARKS, for the appellant.

Mr. C. J. METZNER, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

One Stephenson had been negotiating with Scarlett, the

appellee, for the purchase of land belonging to the latter, situated in the State of Michigan. He was to give Scarlett, in exchange, a mortgage on certain lands in Bureau county, in this State, and a deed from the appellant, Cooley, to a tract of land in Iowa, which he represented Cooley to hold in trust for him. Scarlett was to convey the Michigan land to Cooley. Scarlett and Cooley both executed their deeds, and these were left with one Johnson as a depositary, to remain until Scarlett should be satisfied with the title of the mortgaged lands, and then the deeds were to be delivered. Scarlett was not satisfied with the title, and several times during the month of August, demanded back his deed from Johnson, but failed to procure it. In the month of September, Cooley procured the deed from the depositary, Johnson, for the Michigan lands, under a pretence that he wished to get from it a description of the lands. He promised to return it, but instead of doing so, he caused it to be recorded in the State of Michigan, and conveyed the land to Ridder and Perrin, who also caused their deeds to be recorded. Scarlett then filed his bill against Cooley, Ridder and Perrin, and asked and obtained a decree cancelling these deeds. The defendants below appealed.

The facts we have briefly recited are set out with much detail in the decree. It is urged by the appellant's counsel that no such proof was made on the hearing, or appears elsewhere in the record. But since the passage of the act allowing oral testimony in chancery, it has been a settled practice, under repeated decisions of this court, to preserve the evidence by recitals in the decree, if counsel prefer that method. We can no more question its statements than we can those of a bill of exceptions in a common law case. If the Circuit Judge has inadvertently signed a decree in any case, containing erroneous recitals of the proof, he may correct it, even at a subsequent term, on his becoming satisfied that an error in this respect has been committed.

It is also urged that Stephenson should have been made a party. This was not necessary. Stephenson had no interest

in this proceeding, as it stands on the face of the pleadings and proofs. The object of the bill was, not to cancel a contract with Stephenson, since it proceeds upon the ground that no contract was ever made, but simply to procure the cancellation of an instrument which Cooley had fraudulently got into his possession, and under which he claimed title. It does not appear that Stephenson claimed that the contract between himself and Scarlett had been completed, or that he had any connection with the withdrawal of the deed by Cooley. On the contrary Stephenson seems to have, taken back from Scarlett the note secured by the mortgage on the Bureau land.

We should have no hesitation in affirming the decree if we could regard it, in its present form, as within the power of the court to make. But we can not. It purports to pronounce null and void conveyances of land, situated in the State of Michigan, which conveyances have been duly recorded in the recorder's office of that State. Now, whether these recorded deeds are nullities, even under this fraud, must necessarily depend upon the local laws of Michigan, which we can not assume to administer. The courts of Michigan may well claim the exclusive right of deciding upon the recorded titles of their own lands, and would be apt to pay but slight regard to this decree. Suppose a citizen of the State of New York were to bring an action of ejectment in this State against the occupant of a piece of land, and, to rebut the title shown by the defendant, should produce a decree of a New York court pronouncing some deed in the defendant's chain of title to be a nullity, and rendered in a proceeding to which the defendant in the ejectment was not a party? Would our courts pay any attention to such a decree? Of what avail is a recorder's office, if deeds, duly reduced to record, can be annulled by a chancery proceeding in another State, so that innocent purchasers can not be protected under them? And the object of this decree is to totally annul the title, so as to cut off even remote and *bona fide* purchasers. This can not be done by a proceeding in this State.

The decree, however, may be remodeled so as to bring it within the principles of chancery jurisdiction and still afford some protection to the complainants. Cooley, Ridder and Perrin are all personally before the court. There is no attempt to prove that Ridder and Perrin were purchasers for a valuable consideration, and they do not even claim to be so, in their answers, which are sworn. Being then personally within the jurisdiction of the court, it can compel them personally to execute to Scarlett a release of all claim acquired through the deed from him. If they refuse to do so they can be attached for contempt and held in custody until they execute the decree, and if, in the mean time, it should be made to appear to that court that they are seeking to encumber the title by conveyances to third persons, that also might be treated as a contempt for which the Circuit Court could attach and punish them. If they go beyond the jurisdiction, the court can appoint a special commissioner to make the conveyance in their stead.

Decree reversed and cause remanded.

*Decree reversed.*