# WHEELING.

## TENNANT'S HEIRS *v.* FRETTS *et al.*

### Decided June 11, 1910.

1. QUIETING TITLE—*Removal of Cloud on Title—Right to Equitable Remedy.*

   Equity has jurisdiction, at the suit of an owner of land who is in possession thereof under a good legal title, to remove a cloud from his title by a decree cancelling and expunging from the records of the county in which the land is situate, a void deed, or writing constituting a cloud upon, or menace to, his title.

2. SAME—*Removal of Cloud on Title—Jurisdiction of Equity.*

   The power of a court of equity to grant relief, in such case, is independent of any statute conferring jurisdiction, and rests on general equity principles and practice.

3. SAME—*Nature of Remedy—Venue.*

   A suit to remove cloud and quiet title is local in its nature, and the jurisdiction of the court is determined by the *situs* of the land.

4. SAME—*Decree—Operation.*

   The decree for relief in such suit operates generally, if not always, *in rem,* and need not be *in personam.*

5. JUDGMENT—*Process to Sustain Judgment—Nonresidents—Substituted Service—Judgment in Rem.*

   The statute, (sections 11, 12 and 13, ch. 124, Code 1906) providing for service of process on a non-resident by publication, or by personal service out of the state, can not authorize the rendition of a personal judgment, or decree, against a non-resident so served; but it does authorize any court, whether of law or of equity, to pronounce a judgment or decree binding *in rem,* in any case in which such court would otherwise be competent to do so if the defendant were personally served within the state.

6. SAME—*Process to Sustain Judgment—Service on Nonresident by Publication—Decree in Rem.*

   Equity may, upon service of process on a non-resident by publication, remove cloud from title to land within its jurisdiction by a decree, binding only *in rem.*

Appeal from Circuit Court, Monongalia County.

Bill by the heirs of Peter Tennant against A. E. Fretts and

others.  Decree for complainants, and the mentioned defendant appeals.

                                                    *Affirmed.*

*W. G. Bennett* and *Goodwin & Reay,* for appellant.

*Terence D. Stewart* and *Charles E. Hogg,* for appellees. ·

WILLIAMS, JUDGE: ·

This is an appeal by A. E. Fretts from a decree of the circuit court of Monongalia county, made on the 19th of May, 1908, granting relief to plaintiffs upon a bill to remove cloud from title to land.

The following are the facts:  On May 2, 1900, Peter Tennant executed to A. E. Fretts a writing under seal, which plaintiffs call an option, but which defendants insist is a contract of sale, agreeing to sell to him the "Pittsburg or River vein of coal" underlying 163 acres of land in Monongalia county at $25 per acre.  This writing was signed by both Tennant and Fretts, but was not acknowledged by Tennant.  On the 4th of May, 1900, Fretts acknowledged it before a notary public in Pennsylvania, and on the same day, by writing indorsed on the back of the instrument, assigned his interest therein to Wm. Allison of Uniontown, Pennsylvania.  He acknowledged this assignment also before a notary public in Pennsylvania.  On the 22d of May, 1900, both the original contract and the assignment were recorded in Monongalia county, West Virginia.  Nothing was ever paid to Tennant on the contract, except the one dollar consideration recited in it.  Peter Tennant died in August 1904. On the 3d of November, 1905, his heirs sold the same vein of coal to Smith Hood, Jr., and Homer C. Price, for $95 per acre, to be paid, one third upon approval of title and acceptance of deed, and the balance in one and two years from acceptance of deed.  Hood and Price discovered the Fretts contract on record, and refused to make payment until the rights of Fretts and Allison in the coal was determined.  Thereupon the heirs of Peter Tennant brought this suit, praying to have the Fretts contract cancelled as constituting a cloud upon their title. Fretts and Allison are both residents of Pennsylvania, and were both personally served with original process in that state. · Allison did not appear; but Fretts appeared by counsel and

demurred, answered and filed a cross bill praying for specific execution of the contract.

The first question presented is one of jurisdiction. Counsel for Fretts insist that the court is without jurisdiction to grant relief upon personal service of process upon defendants in Pennsylvania, which has no more effect than an order of publication, published in a newspaper. This question has never before been presented to this Court for adjudication. If relief in such case can not. be decreed it might often happen that a party would be without remedy. It is not within the sovereign power of a state to give extra-territorial effect to the decrees and processes of its courts, nor is there any means by which a resident of one state can be compelled to submit himself to the civil jurisdiction of the courts of another. Consequently, it follows that, unless the circuit court of Monongalia county had jurisdiction to grant relief by means of an *in rem* decree, plaintiffs are practically remediless. The courts of Pennsylvania can not give them relief, because a decree of the court of that state could not affect title to land in this state. *Wilson* v. *Braden,* 48 W. Va. 196; *Poindexter* v. *Burnwell,* 82 Va. 507; *Gibson* v. *Burgess,* 82 Va. 650; *Vaught* v. *Meador,* 99 Va. 569; *Cooley* v. *Scarlet,* 38 Ill. 316; *Fall* v. *Eastin,* 215 U. S. 1. The relief in this case must come through the direct operation of the decree upon the subject matter, or not at all. It is not a case where the relief depends upon an act which a court of equity may compel a defendant to perform, such for instance as the execution of a deed in completion of a contract, or the surrender of title to land acquired in violation of trust or by some species of *mala fides.* In cases of that character the court having jurisdiction of the person of defendant, may grant relief by compelling the defendant to perform the act essential to accomplish it. The decree in such cases would be purely *in personam,* and while they could not directly affect real estate in another state, yet the relief could be obtained through the act of the party, even to the extent of conveying land in another state. In such case it is the act of the party that affects the land, not the court's decree. *Watts* v. *Massie,* 6 Cranch 148; *Guerrant* v. *Fowler,* 1 H. & M. 6; *Farley* v. *Shippen,* Wythe (Va.) 254; *Dickinson* v. *Hoomes,* 8 Grat. 353; *Wilson* v. *Braden,* 48 W. Va. 196; *W. U. Tel. Co.* v. *Western & Atl. R. R.*

*Co.,* 8 Baxter (Tenn.) 54; *Mullen* v. *Dows,* 94 U. S. 444; *Wood* v. *Warner,* 15 N. J. Eq. 81. But in the present case the suit is to cancel, and expunge from the records of Monongalia county, a writing which constitutes a cloud upon plaintiffs' title to land in this state, and unless the decree of the West Virginia court can operate directly upon the subject matter, in other words unless the court can pronounce an *in rem* decree, plaintiffs are without means of relief. They are in possession of the land and have the legal title; there is nothing that a Pennsylvania court can compel defendants to do that will afford them relief. But counsel for appellant insist that a court of equity can not pronounce an *in rem* decree in the absence of a statute authorizing it to do so, and that we have no such statute. We must admit that there is no statute conferring jurisdiction on courts of equity to make an *in rem* decree in suits to quiet title, and the action of the lower court must be sustained, if sustained at all, upon principles of general equity practice. But can it·be possible that a court of equity is powerless to grant relief ·by way of cancelling a recorded writing which affects title to land within its jurisdiction, without it can obtain jurisdiction of the defendant also? Is this the state of our law? Does equity never act except upon the person? Is a statute necessary to give equity jurisdiction to quiet title where it can not get jurisdiction of the person of defendant? We do not think so. Equity has exercised jurisdiction to grant·such relief, independent of statute, both in England and in this country, for more than a century. *Hayward* v. *Dimsdale,* 17 Vez. 111; *Grover* v. *Hugell,* 3 Russ (Eng. Ch.) 428; *Ward* v. *Ward,* Hayw. (N. C.) 403 *Pelit* v. *Shepherd,* 5 Paige 493; *Apthorp* v. *Comstock,* 2 Paige 482; *Shattuck* v. *Carson,* 2 Cal. 588; *Norton* v. *Beaver,* 5 Ohio 178; *Groves* v. *Webber,* 72 Ill. 606; *O'Hare* v. *Downing,* 130 Mass. 16; *Ambler* v. *Leach,* 15 W. Va. 677; *Waldron* v. *Harvey,* 54 W. Va. 608; *Smith* v. *O'Keefee,* 43 W. Va. 172. This power is inherent in courts of equity. It needs no statute to confer jurisdiction on courts of equity to quiet title, any more than to set aside a fraudulent conveyance or specifically enforce a contract for sale of land. It was the rigid rules of the common law, and strict adherence to former decisions, simply as precedents, that made courts of equity necessary, and ever since their formation it has been the

boast of the chancellor that there is no right which has not a corresponding remedy. 1 Pom. Eq., section 108. One of the principle grounds of original equity jurisdiction rests on the fact that courts of law are not always adequate to afford the relief, and in any case where, according to the principles of natural justice, there is a right to be protected, or enforced, and the law has not provided an adequate remedy, equity takes jurisdiction. *Bowyer* v. *Creigh,* 3 Rand. 25. We can not say that equity is impotent in the present case to grant relief, simply because defendants are beyond the jurisdiction of the court and can not be compelled to obey its process.. Equity can remove a cloud from title to land within the court's jurisdiction without having before it the person of defendant. It has power to make a decree which may operate upon the subject matter of the suit, notwithstanding such a decree is, in its nature, *in rem*. It would indeed be a deplorable condition if our law afforded no relief to a land owner who is in possession of his land under good and sufficient title, but which happens to be encumbered by some adverse claim, or lien of record, 'which had been discharged but not released. Such claims might never disturb his possession, but they are a menace to his title, and may greatly affect the selling value of his land. No citizen whose lands are thus affected can enjoy his rights of property to the full extent, so long as the *jus disponendi* is thus interfered with. Every state owes to its citizens the duty to protect the rights of property, as well as the persons, of its citizens, and we think the laws of this state are ample to authorize the Court to give relief in the present case.

The land is situate in Monongalia county, and this gave the court of that county jurisdiction. The subject matter of the suit is local. *Cooley* v. *Scarlet,* 38 Ill. 316. The suit could not have been brought in any other court. It is local in its nature, like the abating of a nuisance, *Miss. & Mo. R. R. Co.* v. *Ward,* 2 Black (U. S.) 485; or the enjoining of an act which affects real estate, *Northern Ind. R. R. Co.* v. *Michigan Cent. R. R. Co.,* 15 How. 233.

The next question is, is the court authorized to grant relief in this case upon an order of publication against a non-resident? We think it is. Of course a court can not pronounce a judgment, or decree, that will be binding on the person of the

non-resident defendant, or that can have any force or effect whatever beyond the territorial jurisdiction of the court, upon other than .personal service of process. The leading case of *Penoyer* v. *Neff,* 95 U. S. 714, settles this principle. But 'where the proceeding is *in rem,* as upon attachment of property, or where the judgment or decree is to settle and determine the title to real estate within the court's jurisdiction, it is competent for the legislature to provide for service of process by publication against a non-resident defendant. *Cooper* v. *Reynolds,* 10 Wal. 308; *Arndt* v. *Griggs,* 134 U. S. 316; *Witten* v. *St. Clair,* 26 W. Va. 762. But counsel for defendant insists that the legislature of West Virginia has not made any provision for an order of publication to be had in a suit in equity to remove cloud from title. This depends upon the construction to be given to sections 11, 12 and 13 of chapter 124, Code (1906). This chapter deals with process of the court, and the manner of service thereof; its scope is not confined to processes to be issued by any particular courts, or in any special suits, or actions. Section 2 of this chapter begins by saying, "Process from any court" etc. This applies to courts in chancery as well as courts of law. Sections 11, 12 and 13 provide for order of publication against non-resident defendants, and how the same shall be published. Section 13 provides that personal service on a defendant outside of the state shall have the same effect as an order of publication duly posted and published against him. These provisions must be considered as applying to a non-resident defendant in any action at law, or suit in equity, where the court has jurisdiction of the subject matter of the action, or suit, and can render a judgment, or decree, *in rem.* Section 13 closes as follows: "Upon any trial or hearing under this section, such judgment, decree or order shall be entered as may appear just". While these provisions are not intended to confer equity jurisdiction in cases not otherwise cognizable in equity, it clearly 'warrants the service of process by publication in any case where equity has jurisdiction of the subject matter, and is not obliged to have the defendant personally in court in order to give the proper relief. If it be true that a statute is necessary to give equity jurisdiction to quiet title to land, or if it be true that equity can grant relief only by means of a personal decree, except when it is

otherwise expressly authorized by statute, the above provisions for service of process by publication can have no application in the present suit. But we do not understand that equity jurisdiction to pronounce a decree *in rem,* is dependent upon statute. Pomeroy in his work (Eq. Juris.) says, "the decrees of a court of equity may be made to operate *in rem* to the same extent and in the same manner as judgments at law". Vol. I, section 135. It depends upon the character of the wrong, and the nature of the relief which the court is asked to grant, whether or not the decree must be *in rem,* or *in personam.* The most usual method of procedure in equity is by decrees which directly affect the person. But it seems to be an established rule, that if the subject matter of the suit is local, and the relief sought is such that it requires the performance of no act by the defendant to give effect to the court's decree, it can make a decree which will operate directly upon the subject matter.

The case of *Arndt* v. *Griggs,* 134 U. S. 316, bears on this subject, and is cited in the briefs of counsel for both plaintiffs, and defendant, as authority for their respective contentions. That was an action in the circuit court for the district of Nebraska to recover possession of land and quiet title. The plaintiff obtained judgment, and the defendant carried the case to the Supreme Court of the United States. As we understand the decision in that case, it settles no other principle than that a state has authority to provide, by statute, for the settlement of title to real estate within the state, in which a non-resident defendant may claim title or interest, and that such non-resident may be served by publication. It does not decide that a non-resident may not also be brought in, by publication, to answer a suit brought to quiet title to land, where the court has jurisdiction of such suit on principles of general equity practice, independent of a statute conferring such jurisdiction. There had been a decree or judgment in favor of Charles L. Flint against Michael Hurley and another, in the state court of Nebraska, adjudicating title to land as against the defendants who had been proceeded against by publication as non-residents. The question was whether the judgment of the state court was *res judicata* upon privies to the original parties, in the ejectment suit subsequently brought to recover the same land in the

U. S. Court, and the Supreme Court held that the judgment of the state court was binding on the non-resident. It is true that there was a statute of Nebraska authorizing suits to try title to land, upon publication, but that fact does not make that case decisive of the point in the present case. A number of cases are cited by Mr. Justice Brewer, who delivered the opinion of the court, both from the state courts and from the Supreme Court of the United States, all of which go no farther than to support the general doctrine that the states have power to provide for the settlement of title to lands within their territorial limits, and that the title, or interest, of a non-resident therein may be settled, and determined against him upon publication. The most of the cases on this point are from states which have, by statute, greatly enlarged the jurisdiction of equity, which was originally exercised only for the purpose of quieting title in favor of the owner of the legal title who was in possession. In many states the statutes have so enlarged the original equity jurisdiction as to enable the court to determine any question of title, whether legal or equitable, between conflicting claimants, and whether the plaintiff be in, or out, of possession. These statutes have been uniformly upheld by the Supreme Court of Appeals of the United States. But we find no decision which denies the doctrine that equity has original jurisdiction to remove a cloud and quiet title to land, in a suit brought by the legal owner who is in possession. Equity, unless aided by statute, will not entertain such a suit under any other conditions, and when such conditions do exist, no statute is needed to confer jurisdiction.

It is true that in the case of *Hart* v. *Sansom*, 110 U. S. 151, it was held that a judgment of the state court of Texas, rendered upon a petition to recover land, and quiet title, wherein Hart had been proceeded against by publication, was not binding on him. But the court did not so hold because the state court was not authorized to render a binding judgment in such case upon publication, but because the allegations of the petition did not sufficiently set forth and describe the claim, or interest of Hart, in the land. The court in its opinion, by Justice Gray, page 154, says: "The petition alleged that Wilkerson was in possession; and that the other defendants, except Hart, held recorded deeds, which were fraudulent and void, and cast a cloud

upon the plaintiffs' title. But as to Hart, it did not allege that he was in possession, or was in privity 'with the other defendants, or that he held any deed, but only that he set up some pretended claim and title. And the verdict finds that he claimed the land, but had no title of record or otherwise therein. The judgment is that the plaintiffs recover the land of the defendants, and that the deeds · mentioned in the petition be and are annulled and cancelled, and the cloud thereby removed, and for costs; and execution is awarded for costs only, and not for any writ or process in the nature of a writ of possession or *habere facias.*

It is difficult to see how any part of that judgment (except for costs) is applicable to Hart; for that part which is for recovery of possession certainly cannot apply to Hart, who was not in possession; and that part which removed the cloud upon plaintiffs' title appears to be limited to the cloud created by the deeds mentioned in the petition, and the petition does not allege, and the verdict negatives, that Hart held any deed".

The court did not even intimate that Hart would not have been bound, if the claim which he afterwards asserted in another suit, had been sufficiently pleaded in the first suit involving the same land.

The case of *Roller* v. *Holly,* 176 U. S. 398, is more directly in point than either of the other cases above cited. In that case two points arose: (1) whether or not process from a court of Texas served upon a defendant residing in Virginia on December 30, 1890, to appear in Limestone county, Texas, on January 5, 1891, "was due process" of law under the Fourteenth Amendment, such service being given the effect of publication; (2) whether or not the court of Texas had jurisdiction to proceed against a non-resident to enforce a lien on land for purchase money, there being no statute of that state authorizing such proceeding, and there having been no seizure *in rem* of the lands, nor any notice to the vendees in possession claiming under the non-resident. In regard to the first point, the court did not undertake to say 'what length of time would be reasonable notice, so as to constitute due process of law, but held that, on account of the long distance between the place of service and the place of return, five days was not sufficient time, and that judgment on such short notice was not binding. Concerning the second point, after discussing the questions decided

67 W. Va.

in the two cases of *Hart* v. *Sansom,* and *Arndt* v. *Griggs, supra,* the court, in its opinion by Justice Brown, says: "It is true there is no statute of Texas specially authorizing a suit against a non-resident to enforce an equitable lien for purchase money, but article 1230 of the Code of Texas, hereinafter cited, contains a general provision for the institution of suits against absent and non-resident defendants, and lays down a method of procedure applicable to all such cases. Obviously this article has no application to suits *in personam,* as was held by the supreme court of Texas in *York* v. *State,* 73 Tex. 651; *Kimmarle* v. *Houston & Cent. Tex. Ry. Co.,* 76 Tex. 686; *Maddox* v. *Craig,* 80 Tex. 600; and by this court in *Pennoyer* v. *Neff,* 95 U. S. 714, 723. The article must then be restricted to actions *in rem;* but to what class of actions, since none is mentioned specially in the article? We are bound to give it some effect. We can not treat it as wholly nugatory, and as it is impossible to say that it contemplates a procedure in one class of cases and not in another, we think the only reasonable construction is to hold that it applies to all cases where, under recognized principle of law, suits may be instituted against non-resident defendants".

The statute in West Virginia, authorizing service of process upon a non-resident by publication, does not specify in what particular class of cases such service is authorized. In this respect the statutes of the two states are similar. There was no statute in Texas expressly authorizing a court to proceed by publication to enforce a vendor's lien against a non-resident, yet the United States court held that the right to proceed by publication applied to such a suit, because under the recognized principles of law obtaining in that state, the court had jurisdiction of such a suit. There is no statute in this state expressly authorizing a suit to remove a cloud from title, but under the well recognized principles of law which obtain in this state, a court of equity has jurisdiction of such a suit brought by one who has both the legal title and possession of the land. Therefore, the analogy between the two cases is perfect, and the same principle may be properly applied to both. We do not understand any decision, state or federal, to hold that equity is dependent upon statute for jurisdiction to remove a cloud from title in a case where the plaintiff is in possession, claim-

ing under a valid legal title. These are the requisites for original equity jurisdiction in suits to quiet title, and equity has always exercised it, for the reason that the law, in such a case, afforded no remedy. But many of the states have, by statutes, provided that suits in equity may be brought to settle and determine title to, and interest in, land, whether the title or claim be legal or equitable, and without regard to possession. And it is upon the construction of these statutes that nearly all of the cases involving the question of the right of a court to make a binding decree upon service by publication have been reviewed by the Supreme Court of the United States. / We have no statute in West Virginia enlarging the jurisdiction of equity in such matters, nor do we assert that equity has authority in this state to give relief in a proceeding to quiet title, otherwise than is derived from the general equity practice. / But inasmuch as it has jurisdiction to grant relief in the present case, and could under the principles of original equity practice do so, without the aid of statute, provided the defendant was before the court, by a decree operating directly upon the subject matter, the statute above cited, sections 11, 12 and 13 of chapter 124, steps in, and empowers it to pronounce such a decree upon process served by publication against a non-resident, which will be as conclusive of his right in the land as if he had been personally before the court. 4 Pom. Eq. sections 1396-7-8-9. ·

The next question relates to the merits of the case. Is the writing a contract of sale, or is it only an option? This depends upon its proper construction. The writing is under seal, and after describing the land, under which the vein of coal lies, it proceeds as follows, viz: "The coal to be paid for as follows, at the rate of Twenty-five $25.00/100 Dollars per acre; One Dollar on the signing of this agreement and the balance on payment as the party of the first part elects. The deed to be made for the above described tract of. coal by the party of the first part, their heirs or assigns, on 15 days notice in 'writing by the party of the second part, his heirs or assigns. A good deed with general warranty to be made whenever the unpaid purchase money is secured by bond with mortgage on the premises. A failure of the party of the second part to make the first payment within 30 days from the above date shall render this agreement null and void. The full amount for the above

described coal is to be paid when Deed is made as above stated. It is further agreed that the second party has the right to enter in and under the abové described tract of land to mine and convey away the coal in this as well as other coal that he now owns or may here after secure 'with the undisputed right of road ways and not be responsible for any damage to the surface nor anything therein nor thereon by the removal of said coal. The first party has the right to drill, mine or bore for oil, gas and water. The second party agrees to pay for surveying & abstract of title when same is accepted. First party agrees to sell the Pittsburg vein of coal in and under the Kings Run Farm bounded on the North by H. & J. Brock, East by Devine, South by R. E. Stephens, West by lands of Ruth E. Stephens, containing 63 acres more or less, at the same rate, terms and conditions as set forth in this agreement for the purchase of coal".

It is impossible to construe the agreement so as to give effect to all of its provisions. Some of them irreconcilably conflict with others. It first says, after reciting that One Dollar is to be paid at the signing of the agreement, that the balance is to be paid as Tennant may elect. Relying on this clause, counsel for appellant insist that Fretts was not bound to make any payment, or tender of payment, until Tennant should elect how much, and when it should be paid. But it also contains the further provision that Tennant was to make deed upon fifteen days notice in writing by Fretts, or his assignee, and that deed was to be made whenever the unpaid purchase money was secured by bond with mortgage on the premises. A mortgage, of course, could not be executed until Fretts, who was to become the mortgagor, had obtained title,· and title was not to be conveyed until after Fretts had given fifteen days notice to Tennant. No notice was ever given, and nothing was ever paid, except the one dollar. The foregoing provisions contradict each other, and both can not be given effect. But the clause providing for a forfeiture of the contract in the event Fretts did not make the cash payment within thirty days from its date, we think, clearly indicates that the writing was considered by the parties as an option, and not as a sale, and that Fretts had thirty days in which to elect whether or not he would accept. It is true the writing does not specify the amount of the cash payment to be made in thirty days. The cash payment can not

refer to the one dollar, because that was expressly provided to be paid at the signing of the agreement. It must, therefore, necessarily refer either to a certain portion of the purchase money, the amount of which was agreed on by the parties but not expressed in writing; or it must refer to, and include the whole purchase price. It is unnecessary, for the purposes of this case, for us to decide whether it referred to the whole, or only to a part of the price. Because it follows, that the failure of Fretts to make a tender of it, whether it was all or a part, within the thirty days, rendered the contract void. If no certain amount in fact was agreed on to be paid within thirty days, Fretts should have elected to pay the whole purchase price, if he would avoid the effect of this forfeiture clause; and not having done so, all his rights under the agreement ended. Courts of equity do not, as a rule, enforce a forfeiture, where there has been a vested right. But this rule does not apply to a case where the contract itself, under which the parties claim, contains an express provision forfeiting a right upon the happening of a certain contingency. *Carney* v. *Barnes,* 56 W. Va. 581.

After this suit was brought, Allison assigned back to Fretts a one-half interest in the aforesaid agreement. Fretts appeared to the suit by counsel and demurred to the bill; Allison made no appearance. The demurrer was overruled and Fretts filed an answer in the nature of a cross bill praying for specific execution of the contract. Plaintiff demurred to the cross bill and the court sustained it. This is right. It is evident that Fretts could not obtain relief without making Allison a party, even assuming that his cross bill was meritorious. The cross bill, on its face, showed that Fretts and Allison were jointly interested in whatever rights were conferred by the contract, and Allison should have joined in the application to the court for specific execution, or, if he refused to join, he should have been made party defendant. In a suit to enforce a contract all persons interested in it should generally be made parties. Waterman on Specif. Perf., section 55; *Wilcot* v. *Pratt,* 125 N. Y. 688; *Woodward* v. *Clark,* 15 Mich. 104. It was also proper to sustain the demurrer to the cross bill, because its averments did not entitle defendant to any relief.

The decree of the lower court holds the writing to be an

option which expired at the end of thirty days from its date, and cancelled it as constituting a cloud upon plaintiffs' title. This was a *quasi in rem* decree, and one which the court had jurisdiction to pronounce. Fretts having appeared in the cause, by counsel, the court could render a personal decree against him for costs. His appearance, not having been limited to the one special purpose of objecting to the process, or to the manner of its service, was a general appearance. *Frank* v. *Zeigler,* 46 W. Va. 614; *State* v. *Thacker Coal & Coke Co.,* 49 W. Va. 140.

Fretts having voluntarily appeared by counsel, and demurred to, and answered plaintiffs' bill, is estopped from denying the court's jurisdiction of his person. *Hunter* v. *Stewart,* 23 W. Va. 549; *State* v. *Rawson,* 25 W. Va. 23; *Giboney* v. *Cooper & Cooper,* 57 W. Va. 74.

There is no error in the decree, and it will be affirmed.

*Affirmed.*