SHEFFEY et al. v. DAVIS COLLIERY CO. et al.

(Circuit Court of Appeals, Fourth Circuit.   November 19, 1914.)

No. 1241.

1. EXECUTORS AND ADMINISTRATORS ⊜⟶431—SUIT BY EX OFFICIO ADMINISTRATOR—VALIDITY—JURISDICTION OF COURT.

Where the state statute, under certain prescribed conditions, made the sheriff ex officio an administrator, the fact that he did not authorize a suit brought in his name as such administrator did not deprive the court of jurisdiction or render its decree invalid.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 764, 767, 819, 1664, 1679–1682;  Dec. Dig. ⊜⟶431.]

2. JUDGMENT ⊜⟶504—COLLATERAL ATTACK—JUDGMENT PREMATURELY ENTERED.

Under a statute authorizing service of process on nonresident defendants by publication, where such publication has been duly made and completed, the court acquires jurisdiction, and the fact that a decree is prematurely entered before the time allowed the defendant to answer has expired does not render it a nullity, but only irregular, and it is not subject to collateral attack.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 944-947;  Dec. Dig. ⊜⟶504.]

3. EXECUTORS AND ADMINISTRATORS ⊜⟶383—SALE OF DECEDENT'S LANDS—COLLATERAL ATTACK—JURISDICTION OF COURT.

Under the law of West Virginia, although a court of equity is authorized by statute to sell lands of a decedent at public auction only, a decree authorizing a private sale, made by the court on evidence that it is for the best interest of the estate, which sale is duly confirmed, is not without jurisdiction and is not subject to collateral attack.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1554;  Dec. Dig. ⊜⟶383.]

4. ADVERSE POSSESSION ⊜⟶70 — CHARACTER OF POSSESSION — WILD TIMBER LANDS.

A purchaser at a judicial sale, in form at least, of a large tract of forest land, which was mountainous and unimproved, who continuously thereafter, during more than the statutory period, paid the taxes, employed an agent to look after the property, remove trespassers, and prevent the cutting of timber, and otherwise exercised such acts of exclusive ownership as the character of the land permitted, *held* to have acquired title by adverse possession.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 394–414;  Dec. Dig. ⊜⟶70.]

Appeal from the District Court of the United States for the Northern District of West Virginia, at Clarksburg;  Alston G. Dayton, Judge.

Suit in equity by Maggie Sheffey and others against the Davis Colliery Company and others.  Decree for defendants, and complainants appeal.  Affirmed.

For opinion below, see 204 Fed. 337.

John W. Davis and Osman E. Swartz, both of Clarksburg, W. Va. (H. G. Kump, of Elkins, W. Va., and Davis, Swartz & Templeman, of Clarksburg, W. Va., on the brief), for appellants.

E. A. Bowers, of Elkins, W. Va., and George E. Price, of Charleston, W. Va., for appellees.

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before PRITCHARD and KNAPP, Circuit Judges, and McDOW-ELL, District Judge.

KNAPP, Circuit Judge. A brief recital of facts which are not in dispute will indicate the questions to be decided. Other facts will be referred to in connection with the various points discussed.

Hugh W. Sheffey, a resident of Staunton, Va., and a lawyer of prominence and extensive practice, died intestate in May, 1889, possessed of a large tract of land in Randolph county, W. Va., containing between 4,000 and 5,000 acres. His heirs at law were a surviving brother and the descendants of deceased brothers, one of whom was a half-brother. His law partner, James Bumgardner, Jr., was appointed administrator and undertook the settlement of his estate. Bumgardner was also the administrator of Mrs. Sheffey, who died about a month after her husband. It turned out that the affairs of Sheffey were badly involved and his liabilities much in excess of the salable value of his property.

On the 24th of March, 1893, a chancery suit was instituted in the circuit court of Randolph county, in the name of A. J. Long, sheriff, administrator, against James Bumgardner, Jr., the Virginia administrator, O. C. Womelsdorf, and a number of other persons alleged to be the heirs of Sheffey, and such proceedings had therein that a sale of the tract of land in question was confirmed to Womelsdorf, and a deed therefor subsequently executed to him by the special commissioner appointed for that purpose. The appellee Davis Colliery Company is the last successor in interest of Womelsdorf and claims title to this tract of land under the deed to him and the decree confirming the same. Since 1893 all taxes assessed against this land have been paid by Womelsdorf and those succeeding to his title.

In October, 1910, this suit was brought by the appellants, who are the heirs of Sheffey and claim to own this land by inheritance from him, to set aside and cancel the deed to Womelsdorf, and all the subsequent conveyances mentioned, as clouds upon their title, on the ground that the entire proceedings in the circuit court of Randolph county, including the decree confirming the sale to Womelsdorf, were wholly void for lack of jurisdiction. The Davis Colliery Company asserts the validity of its title under this decree, and also sets up adverse possession and other defenses, which will be referred to later in this opinion. The case was tried and the suit dismissed, for reasons stated in the opinion of the District Judge, and the heirs have appealed to this court.

It cannot be denied that, if the circuit court of Randolph county had such jurisdiction of the parties and subject-matter as authorized it to make the decree confirming the sale to Womelsdorf, that decree is not open to collateral attack, whatever irregularities may be found in the proceedings. We come, then, to consider the principal grounds upon which it is contended, in brief and oral argument, that the decree in question is a nullity because the court was without jurisdiction.

It is alleged that Sheriff Long, the plaintiff in the chancery suit, did not authorize the bringing of that suit, or sanction the use of his name by the attorney who conducted it, and in fact had no knowledge that such a suit was brought; and he so testified as a witness in this case. But it appears that he himself receipted to the clerk for the original

summons issued in his name as administrator; that it was personally served by his deputy on Womelsdorf; and that after the service he indorsed in his own handwriting on the back of the summons the amount of his fees. It is not altogether easy to see how he can be heard to deny knowledge of this suit when the process by which it was commenced was certainly in his hands soon after its service and presumably also when he signed for it on the process book of the clerk. Moreover, the order of publication was posted on the front door of the courthouse and appeared for four successive weeks in a local newspaper. The attorney who carried on the suit, and who has since died, is shown to have been prominent and highly regarded; and it would seem almost a matter of course that a transaction of so much importance as the sale of this large tract of land by order of the court, in the progress of a suit brought in Long's name, must have been generally known in that community. It is certainly more reasonable, upon the evidence of record, to infer that he had forgotten the circumstance than to believe that it occurred without his knowledge.

[1] But we are not convinced that it was necessary for him to be personally advised, or that lack of knowledge on his part would vitiate the proceedings. He was only a nominal plaintiff, and it did not require his consent to make him the administrator of Sheffey. For aught that appears, he had no discretion in the matter, since the statute made him an instrumentality which might be used against his will under prescribed conditions. Nor is it of any consequence that no funds came into his hands as administrator in this instance. Sheffey left no personal property in West Virginia, and the proceeds of the sale of his real estate were received and distributed under order of the court by a special commissioner. Even if it be assumed that Long did not authorize the suit, or have any knowledge of it until long afterwards, we are of opinion that the court was not thereby deprived of jurisdiction or its decree rendered invalid.

It is also claimed that the court was without jurisdiction by reason of the following facts: The summons in the chancery suit was sued out on March 14, 1893, and the bill of complaint bears the indorsement, "Filed April Rules, 1893." All the defendants named therein were nonresidents of West Virginia, except Womelsdorf, who was personally served in that state on the 27th of March. Upon affidavit of such nonresidence, made by the plaintiff's attorney on the 3d of April, an order of publication was duly entered which described briefly the object of the suit and required the nonresident parties to appear within one month after the date of its first publication. The applicable statute then in force reads as follows:

"Every order of publication shall state briefly the object of the suit, and require the defendants against whom it is entered, or the unknown parties to appear within one month after the date of the first publication thereof. and do what is necessary to protect their interests. It shall be published once a week for four successive weeks in some newspaper published in the county in which the order is made or directed, if one is so published, unless the circuit court of such county otherwise order; and if no newspaper be published in the county, then in such other newspaper as the court may prescribe; or if none be so prescribed, as the clerk may direct. It shall be deemed to have been duly published on the day of the fourth publication thereof. It shall.

also be posted at the front door of the courthouse of the county wherein the court is held, at least twenty days before judgment or decree is rendered." Code 1891, c. 124, § 12.

The first publication of the order occurred on the 5th of April, 1893, and a copy was posted the same day on the front door of the courthouse. The subsequent publications were on the 12th, 19th, and 26th of that month. The month within which the absent defendants were required to appear did not expire, as is claimed, until the 5th of May. But on the preceding day, the 4th of May, a decree pro confesso was entered, which confirmed the sale to Womelsdorf and appointed the plaintiff's attorney special commissioner to cause the lands to be surveyed, ascertain the number of acres, collect the cash and notes which Womelsdorf was to give in accordance with his agreement to purchase, and make report of his proceedings with the view to a further decree.

The argument of appellees that this decree was properly entered on the 4th of May is based upon another provision of the statute which says:

"When such order shall have been so posted and published, if the defendants against whom it is entered, or the unknown parties, shall not appear at the next term of court, after such publication is completed, the case may be tried or heard as to them." Section 13.

[2] The decree in question was entered at the next term of court after the publication was completed, and it is contended that this was a compliance with these statutory provisions taken together. But we are not prepared to sustain this contention and shall therefore assume that the decree was prematurely entered. Nevertheless, we are of opinion that the court had already acquired jurisdiction of the absent defendants, for the purposes of the suit, by reason of the completion of the required publication on the previous 26th of April, and that the decree was not rendered a nullity, but merely irregular and voidable, because entered sooner than a full calendar month after the first publication. It is well settled, in cases of personal service, that the entry of judgment before the time allowed for answer expires is not a jurisdictional defect which exposes the judgment to collateral attack, but rather an irregularity which can be availed of only in the original suit. We see no reason why the same rule should not apply in cases of service by publication, and the weight of authority is clearly to that effect. Under the West Virginia statute, as under similar statutes of other states, the publication provided for is a substitute for personal service; and when all the requirements of the statute in that regard have been observed and the publication completed, the power of the court thereupon attaches to exercise its functions in respect of the subject-matter of the suit; and this is expressly held in Tennant's Heirs v. Fretts, 67 W. Va. 569, 68 S. E. 387, 29 L. R. A. (N. S.) 625, 140 Am. St. Rep. 979, the syllabus upon this point reading as follows:

"The statute * * * providing for service of process on a nonresident by publication, or by personal service out of the state, cannot authorize the rendition of a personal judgment, or decree, against a nonresident so served; but it does authorize any court, whether of law or of equity, to pronounce a judgment or decree binding in rem, in any case in which such court would

otherwise be competent to do so, if the defendant were personally served within the state."

In this connection it may be observed that the bill filed in the chancery suit is adequate and even ample in its allegations of a cause of action, the affidavit of nonresidence is not open to criticism, the order of publication contains everything which the law requires, and that order was posted and published in strict conformity with the statute. When all this was done, the jurisdiction of the court was complete, in our judgment, to grant the relief sought, and it cannot be reasonably held that a decree which would have been perfectly valid if rendered on the 5th of May was an absolute nullity because entered the day before.

The case at bar seems to us clearly distinguishable from that of Guaranty Trust Co. v. Green Cove Railroad, 139 U. S. 137, 11 Sup. Ct. 512, 35 L. Ed. 116, which is apparently relied upon by appellants. In that case the validity of the sale in the state court was attacked upon the ground that proper notice of the proceedings had not been given as required by the Florida statute, which provides in substance that nonresident defendants may be cited to appear within four months, by a publication to be made once a week for the four months. The notice given required the absent defendants to appear and answer the bill on or before the first Monday in December, which was the first day of that month, and the notice was first published on the 9th of August. The Supreme Court held that, since the interval between the 9th of August and the 1st of December was less than four calendar months, the notice had not been published as the statute required, and therefore jurisdiction of the absent defendants had not been acquired. But in this case, as already stated, the publication was in precise compliance with the West Virginia statute and was fully completed, as obviously it could be, before the expiration of the month allowed to the defendants to appear and "do what is necessary to protect their interests." We are persuaded that the premature entry of this decree was a mere irregularity which did not affect the jurisdiction of the court, because that jurisdiction had already been obtained, and that the decree cannot for that reason be questioned in a collateral suit.

The statute above quoted, which requires publication for only four weeks, without other effort to give notice to absent defendants, is undoubtedly drastic. But its harshness is very much mitigated in practical effect by another provision then in force, allowing such defendants five years to get relief, which reads as follows:

"Any unknown party or other defendant, who was not served with process in this state, and did not appear in the case before the date of such judgment, decree or order, or the representative of such, may, within five years from that date, if he be not served with a copy of such judgment, decree or order, more than one year before the end of said five years, and if he was so served, then within one year from the time of such service, file his petition to have the proceedings reheard in the manner and form provided by section 25 of chapter 106 of this Code, and not otherwise; and all the provisions of that section are here made applicable to proceedings under this section." Section 14.

[3] It is further and earnestly contended that the decree in question is void because it confirms a private sale, which was beyond the power of the court, since the statute required a sale in such case to be made at public auction. It appears that in June, 1892, a contract was entered into for the sale of this tract of land to Womelsdorf. It was signed by him and by Bumgardner, the Virginia administrator. It purports to be signed also by Maggie Sheffey, a niece of the intestate who lived with him, but she denies having executed it. By this contract Womelsdorf agreed to pay $3 an acre for the land; the tract to be surveyed and the number of acres ascertained. Payment was to be made upon specified terms within a certain number of days after the "sale is ratified and confirmed by the circuit court of Randolph county, W. Va., in a suit or other proceedings instituted in said court to ratify and confirm this contract." Of course Bumgardner had no authority to bind the heirs by such a contract, and Maggie Sheffey was not an heir at that time. It amounted, therefore, to an offer by Womelsdorf to purchase the land, at the price and on the terms recited, subject to the ratification provided for, and it was undoubtedly so regarded by the court which afterwards confirmed the sale. On the 28th of April, 1893, pursuant to notice duly published, depositions were taken of two witnesses, who are described as men well known and of high standing, whose statements showed that they were familiar with this tract of land and with the value of lands of like character in that section, and who testified to the effect that it would be advantageous to both the creditors and the heirs to accept the offer of Womelsdorf, because in their judgment it was more than the land would bring at public sale under decree of the court. Indeed, one of these witnesses expressed the positive opinion that a public sale would not realize as much as $10,000 for the entire tract. It was evidently upon the showing so made, and in the belief that it was for the interest of all concerned to accept the offer, which amounted to upwards of $13,000, that the court entered the decree of May 4, 1893, and appointed a special commissioner for the purposes therein recited.

Under the circumstances stated, we are of opinion that the decree in question was not in excess of the power of a court of equity, and that it is not now subject to collateral attack, although it be conceded that a statute of the state required a sale at auction. The law to be followed in this case, whatever rule may elsewhere obtain, is the law of West Virginia, and this court is bound to accept, as the law of that state, the decisions of its court of last resort. This being so, we find ourselves unable to distinguish the case at bar, as respects the principle involved in the question now considered, from the case of Klapneck v. Keltz, 50 W. Va. 331, 40 S. E. 570, decided by the Supreme Court of Appeals in November, 1901. In that case there was an order for a public sale and several efforts to dispose of the property at public auction, with resulting failure to get satisfactory bids. Thereupon, after some delay, the court directed the acceptance of a private offer subsequently made and confirmed the sale to the party making such private offer. In this case the court was judicially satisfied in advance, by evidence which appears reliable and convincing,

that an offer had been made and was then open to acceptance which would realize more for creditors and heirs than there was any probability of getting if a public sale were ordered. In the former case the court confirmed a private sale after attempts to sell at public auction had apparently failed; in the latter case the court acted in the first instance upon adequate proof that a public sale would involve expense and undoubted loss, as compared with the sum which Womelsdorf stood ready to pay. In the last analysis, what difference is there between the two cases? It was contended in the Klapneck Case, as appellants contend here, that the court was without power under any circumstances to sanction a private sale, in a suit of this character, because the statute required a sale at public auction. But surely the court did not get its jurisdiction, otherwise wholly wanting, to decree a private sale, by reason of the circumstance that a public sale previously ordered had not resulted in an acceptable bid. The power which was exercised in that case, independent of and in disregard of the statute, was not derived from and could not be conferred by the fact that a futile effort had been made to sell at public outcry. And yet the sale was held valid, even upon direct appeal, because the court had inherent authority, springing from the general nature of its powers, to order and confirm a private sale, when it was made to appear that the interest of all concerned would thereby be promoted. As the Supreme Court of Appeals said:

"Notwithstanding the statute there are circumstances under which for the purpose of doing equity and justice the court must have the power to make a sale of property without resort to public outcry."

In other words, the failure to comply with the statute, for reasons which induced that course, did not deprive the court of jurisdiction or render its action void in ordering a private sale. This proposition, as it seems to us, is necessarily involved in the decision in Klapneck v. Keltz. But if there are circumstances in which a court can order a private sale notwithstanding the statute, as this West Virginia case distinctly holds, then it must be for the court, in which the action is pending, to determine whether the facts of the particular case justify noncompliance with the statute, and its determination in that regard cannot be reviewed in a collateral suit, but only, if at all, in the original proceeding. It is also to be noted in that case that the court gives great effect to the decree of confirmation, as will be seen by the following excerpt from the opinion.

"In the present case there is no error claimed in the decree of confirmation, but the circuit court sets it aside for the sole reason that the decree of sale authorized the commissioners of sale after abortive attempts at public sale to take private offers in writing and report them to the court. If this be erroneous, the weight of authority to the contrary notwithstanding, it would not justify the court in setting aside the decree of confirmation. For, as we have seen, though a commissioner be directed to sell at public auction and he sells privately and the court confirms the sale, the decree of confirmation cannot be disturbed. It is the confirmation that makes a judicial sale, and nothing that happens prior thereto."

The same doctrine is laid down, both as to the jurisdiction of the court and the effect of confirmation, in an Arkansas case (Apel v.

Kelsey, 52 Ark. 341, 12 S. W. 703, 20 Am. St. Rep. 183), which involved the precise question here considered and is therefore directly in point.

We have carefully examined the other defects alleged in the proceedings in the chancery suit, and are satisfied that the objections thus raised are founded upon mere irregularities which did not affect the jurisdiction of the court and cannot support a collateral attack upon its decree.

We are therefore constrained to hold, in the light of the facts as they appear in this record, and upon the authority of the decisions above cited, that the decree confirming the sale to Womelsdorf was not beyond the power of the court which rendered it and is not open to question in the present suit.

[4] If we are correct in these conclusions, the action of appellants cannot be maintained, and there is little need of further discussion. But since the court below based its decision upon different grounds, we deem it suitable to give brief expression to our views upon the other defenses set up by the appellees. After careful study of the evidence, it seems reasonably clear to us that the successors of Womelsdorf have sustained their claim of title by adverse possession. The sale to him was a judicial sale, at least in form, and had the undoubted effect, even if the decree was void, of giving color of title to the purchaser. From the time of the confirmation of that sale, he and his successive grantees have openly and continuously asserted their ownership of this Sheffey tract. Since 1896 the land has yearly been assessed against them and all taxes paid by them. The agent employed by Sheffey in his lifetime, who continued to look after the property upon his death, recognized Womelsdorf as the new owner, and became his agent soon after the purchase was made. Squatters were removed from the tract by his authority, and an arrangement made by him with another man to take charge of the tract. This man moved onto the land about 1895 and resided there for the next five or six years. The appellants deny that the clearing where he lived was within the Womelsdorf purchase, and the fact in that regard is a matter of controversy. But even if the appellants are right upon this point, which we regard as immaterial, there is apparently no question that this man moved to the place where he lived at the instance of Womelsdorf's agent and under an arrangement with him to look after the property. In the nature of things there was little physical occupation. It was an extensive tract of forest land, mountainous, unimproved, unfenced, and visited mainly by hunters and fishermen. While it was allowed to remain in a state of nature, there was practically nothing to do, except to guard against fires and prevent trespassers from cutting the timber. So far as we can see, the actual occupation of this tract was suited to its location and character. The question of possession in such a case depends upon its particular facts and circumstances and the nature and condition of the land whose possession is in dispute. It seems to us beyond reasonable doubt that Womelsdorf and his successors, for at least 14 or 15 years before this suit was commenced, were in possession of this tract under color of title and continuous assertion of ownership. That pos-

session was open, notorious, uninterrupted, and adverse, and we think the preponderance of proof shows that it was also exclusive. Without referring to the evidence in greater detail, and giving due consideration to the testimony of appellants upon this point, we content ourselves with expressing the opinion that title to this land had been acquired by adverse possession.

Of the remaining defenses which were sustained in the court below, the acquisition of title under the West Virginia statute by the payment of taxes, and the alleged laches of appellants, it is sufficient to say, without reviewing the argument, that we see no reason to question the substantial correctness of the conclusions reached by the learned District Judge.

It follows that no sufficient ground for reversal has been made to appear, and the decree appealed from will therefore be affirmed.